*JOHN D. BIGGS and another v. INSURANCE COMPANY (North Caro-
lina Home).

*Agent and Principal—Insurance.*

1. One who deals with an agent must ascertain the extent of his authority to contract for the principal.

2. A provision in a fire policy rendering it void if the title to the property insured be changed in any way other than by succession by reason of death, or if the policy be assigned without written assent of the company endorsed thereon, is reasonable and just.

3. But it does not apply to a stock of goods disposed of in the ordinary course of trade, unless the sale be in mass, or a new member be admitted into the firm.

4. Whether the forfeiture of the policy extends beyond the insurance on the specific property sold, or the contract is entire (?).

    (*Sossaman* v. *Ins. Co.*, 78 N. C., 145, cited and approved).

CIVIL ACTION tried at Fall Term, 1882, of MARTIN Superior Court, before *Gilliam, J.*

This is an action upon a policy of insurance against fire, issued by the defendant to one Bryant Wynn on the 1st day of October, 1880, in the amount of six hundred dollars for one year—one

---

*Chief Justice SMITH did not sit on the hearing of this case.

hundred dollars being for his store situate at Wynnville, in Martin county, and five hundred dollars for his stock of goods kept therein—the premium paid for the whole being twelve dollars. The store and goods were destroyed by fire on the 1st day of February, 1881.

Amongst other stipulations the policy contained a provision, that "if the title to the property be transferred or changed in any way other than by succession by reason of death, or the policy be assigned, or the property mortgaged, without written permission endorsed hereon, this policy should be void."

On the trial the following facts were agreed to as constituting the case.

On the 3d day of October, 1880, the said Wynn admitted one Mobly into partnership with himself and sold to him one-half of the stock of goods insured, and then in the store, and also by an endorsement on the policy assigned to him one-half interest therein. At the same time one Ewell, who was a solicitor of business for the defendant, signed an agreement printed upon the back of the policy, whereby he gave the assent of the defendant to such assignment—he having, however, no authority to bind the defendant by any such agreement.

After the destruction of the property, one Montgomery, who was an agent of the defendant, erased the name of Ewell from such agreement, and signed his own thereto. Wynn and Mobly afterwards assigned their interest in the policy to the plaintiff, in trust for the benefit of their creditors.

Upon these facts as admitted, the plaintiffs moved the court for judgment for the value of the goods destroyed, which His Honor declined to grant, being of the opinion that the sale of one-half of the stock of insured goods without the consent of the defendant, avoided the policy. The plaintiffs then moved for judgment for the value of the house burned, which was also declined. They then offered testimony to show that at the time he signed the instrument giving the assent of the defendant to the assignment to Mobly, Ewell represented to Wynn that he

had authority to do so, but this was excluded by the court. To these several rulings the plaintiffs excepted, and appealed from the judgment rendered.

*Mr. Jas. E. Moore*, for plaintiffs.
*Messrs. Gatling & Whitaker*, for defendants.

RUFFIN, J. Much of the argument before us was needless, since the case as agreed to expressly negatives the authority of Ewell to bind the defendant, and thus precludes every inference which might otherwise have arisen from his employment as its agent to solicit patronage. Nor could the fact that Wynn believed that he possessed such authority, when in fact he did not, affect the question of the defendant's liability.

When one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to contract. Under any other rule, every principal would be at the mercy of his agent, however carefully he might limit his authority. It is true the power and authority of an agent may always be safely judged of by the nature of his business, and will be deemed to be at least equal to the scope of his duties.

There was, however, in this case no offer to show that the assent given to the assignment fell within the range of Ewell's duties as a solicitor, and, hence, we conclude that it did not do so. His bare assertion of such authority, contrary to his admitted want of it, could not commit the defendant to his act. The plain terms used in the stipulation against alienation of the property and the assignment of the policy, leave no room to doubt the intention of the parties, and this intention when not contrary to law must always govern.

Such a stipulation as this, as being both reasonable and just, has received the sanction of this court in *Sossaman* v. *Pamlico Ins. Co.*, 78 N. C., 145. Indeed, being founded upon the idea of enlisting the care and watchfulness of the insured in the protection of the property, by keeping unimpaired his interest

therein, it has been uniformly regarded as a conservative condition in policies, which merited the support of the courts.

Such a condition, avoiding the policy in case of a sale of the property, does not apply to a stock of goods kept for sale, and disposed of in the ordinary course of trade. The goods may be sold and replaced as often as the interests of the owner require, the policy meanwhile covering and protecting whatever may be on hand. But a sale of them in mass, or any diminution of the owner's interest therein, will, under the authority just cited, work a forfeiture, and so does any change in a partnership owning the goods, by which a new member is introduced. May on Ins. § 279. *Dey* v. *Poughkeepsie Mutual Ins. Co.*, 23 Barb. (N. Y.), 623.

The authorities are not agreed as to how far a breach of the condition, by a sale of a portion of the property, will affect the insurance upon that retained. Some of them hold that the forfeiture should not extend beyond the insurance on the specific property sold, while others maintain, that when the consideration paid is an entire one, the contract should likewise be an entire one, so that a breach as to part would affect the whole, though composed of different kinds and separately appraised. In May on Ins., §§ 277 and 278, the decisions bearing upon the point are all reviewed, and also in *Quarrier* v. *Peabody Ins. Co.*, 10 W. Va., 507. But it is not necessary that we should further advert to them or attempt to reconcile them, for according to no one of them is there a doubt, but that in a case like ours, in which the property insured consists of a single storehouse and the goods kept therein, a breach as to part will work a forfeiture as to the whole. In such case it is impossible to introduce any new element of carelessness by lessening the interest of the owner in one species of the property, so as to increase the risk thereof, without at the same time adding to the hazard of the other. Every risk that can attend the one must attend the other, and consequently the same rule must apply to both.

The contract in this case was an entire one—the premium

paid, a single amount—the application for the insurance on both the house and the goods, one act—and any misrepresentation as to one would have avoided the policy as to both. So that the court feels no hesitation in saying under which rule the case falls. The effort made after the loss to fix upon the defendant the consequences of having assented to the change of interest in the goods, by erasing the name of Ewell from the printed memorandum and adding that of Montgomery, was a plain confession of the former's known want of authority to give such assent. It was, moreover, an attempt to practice a gross fraud upon the defendant which no court will countenance.

The court concurs in every ruling made in the court below, and the judgment there rendered must be affirmed.

No error.                                    Affirmed.