J. W. FLOARS v. ÆTNA LIFE INSURANCE COMPANY.

(Filed 3 April, 1907).

1. **Insurance—Oral Contract to Insure—Written Policy—Delivery— Right of Parties.**—Though an oral contract of insurance or to insure will be upheld as a general rule, such contract merges into the written policy subsequently accepted by the insured; and while such written policy stands as embodying the contract, the rights of the parties must be determined by its terms and conditions.

2. **Same—Fraud or Mistake.**—To enable the holder of such policy to recover in accordance with a previous oral contract differing from the written policy taken and held by the insured, the written policy must be corrected, either for fraud or mistake.

3. **Contracts—Reformation and Damages—One Action.**—In proper instances our courts having both legal and equitable jurisdiction,

Floars *v.* Insurance Co.

have authority to reform a contract and award damages in the same suit.

4. **Same—Mutual Mistake—Authority of Agent.**—To correct the written policy on the ground of mistake, it must be alleged and shown that the mistake is mutual—on the part of the company and the insured—and when the agent is one of limited and restricted power it must be further shown that the policy as claimed is one within the power possessed by the agent, either expressed or implied.

5. **Same.**—Where the agent had no power to issue policies and was not the general agent of the company, but a soliciting agent of restricted powers, his mistake concerning a policy to be issued, which was contrary to the rules and regulations of the company and which it did not authorize, cannot be imputed to the company.

6. **Same—Policy Intended.**—In the present case there is no evidence of any mistake on the part of the company, or that it delivered a policy differing from the one it intended to deliver.

7. **Same—Conduct of Insured Binding—Query.**—Even if there had been a mutual mistake established, whether on the facts of this case the acceptance of the policy by the insured without reading it, and holding same for three months without complaint or protest, the policy as held would not bind the parties, query.

CIVIL ACTION, tried before his Honor, *Webb, J.,* and a jury, at August Term, 1906, Superior Court of WAYNE County.

Plaintiff testified, in substance, that during September, 1904, in Fremont, N. C., at the instance of one Bridgers, a soliciting agent of the company, plaintiff signed an application for an accident insurance policy in defendant company, on the representation of the agent that for the premium agreed upon the policy applied for would confer on plaintiff, in case of total loss of one eye, the right to recover one-third of the face of his policy, which was to be $1,000.

That some time after signing application an accident policy was forwarded to plaintiff from Goldsboro, N. C., signed by M. G. Bulkey, president, and Walter E. Faxon, secretary

of defendant company, and purporting to be countersigned at Greensboro, N. C., by Wm. B. Merrimon, general agent of the company.

That on receipt of the policy plaintiff put same away without reading it; and about three months thereafter, plaintiff having suffered the total loss of one eye, made the formal application for payment of the one-third. But it was found that the policy held by him did not, for such loss, provide for payment of one-third of its face, to-wit, $333.33 1-3, but stipulated only for a current indemnity for time lost, amounting to $15, which company had tendered and still offers to pay.

That company had sent witness a check for the $15, and plaintiff had returned same. That they again sent check for this amount, which plaintiff refused to accept, but held check, which is still uncashed.

Plaintiff further testified that he thought the policy held by him was the one he had bought, but found that it was not the one he had bought.

That Mr. Bridgers, the agent, thought that he was selling witness the policy which would give him an indemnity of one-third of its face in the event of the total loss of one eye, and that plaintiff would not have taken the policy unless he had thought it was like Mr. Bridgers said.

These facts are substantially set forth in the pleadings.

The policy sent up as an exhibit contains numerous provisions stipulating for current indemnity for certain classes of injuries and absolute indemnity for others, but does not contain a stipulation for absolute indemnity to amount to one-third face value in case of loss of one eye.

Defendant offered no testimony.

At the close of the evidence, the Court having intimated an opinion that on the testimony, if believed, plaintiff could

not recover, plaintiff excepted; and, in reference to such adverse intimation, submitted to a nonsuit and appealed.

*Aycock & Daniels* for plaintiff.
*Dortch & Barham* for defendant.

HOKE, J., after stating the case: It seems to be well established that, in the absence of some statutory inhibition, an oral contract of insurance, or to insure, will be upheld if otherwise binding, except, as suggested by one author, in the case of guaranty insurance. Vance on Insurance, 148; Beach on Insurance, vol. 1, sec. 438, note 2. And further, that the enactment of a statute which establishes a standard form for a policy, the statute being only affirmative in its terms, will not invalidate an oral contract. *Hicks v. Ins. Co.*, 162 N. Y., 284.

This and other decisions also hold that, in making a valid oral contract of insurance, general in its terms, the law will read into the contract the standard policy as fixed by the statute, and that, in order to recover on such a policy, the claimant must comply with the necessary and material requirements of such a policy or establish a waiver thereof on the part of the company.

While these principles are very generally admitted, it is also accepted doctrine that when the parties have bargained together touching a contract of insurance, and reached an agreement, and in carrying out, or in the effort to carry out, the agreement a formal written policy is delivered and accepted, the written policy, while it remains unaltered, will constitute the contract between the parties, and all prior parol agreements will be merged in the written instrument; nor will evidence be received of prior parol inducements and assurances to contradict or vary the written policy while it so stands as embodying the contract between the parties.

Like other written contracts, it may be set aside or cor-
rected for fraud or for mutual mistake; but, until this is
done, the written policy is conclusively presumed to express
the contract it purports to contain. Vance on Insurance, pp.
163, 348; Beach's Laws of Insurance, vol. 1, secs. 495, 496;
*Insurance Co. v. Mowry,* 96 U. S., 547.

In the citations from Vance, just made, at page 163, the
author says: "When the contract of insurance is finally
complete, it is customarily embodied in a formal written
instrument termed a policy. This instrument merges all
prior or cotemporaneous parol agreements touching the trans-
actions; and, upon accepting it, the insured is conclusively
presumed, in the absence of fraud, etc., to have given his
assent to all of its terms." And on page 348 he says:
"The rule that all prior parol agreements are merged in
a subsequent written contract touching the same subject-
matter is now too well established to need the support of
cited authority. Therefore, when a policy of insurance,
properly executed, is offered by the insurer and accepted
by the insured as the evidence of their contract, it must
be conclusively presumed to contain all the terms of the agree-
ment for insurance by which the parties intend to be bound.
If any previous agreement of the parties shall be omitted
from the policy, or any term not theretofore considered added
to it, the parties are necessarily presumed to have adopted
the contract as written as the final form of their binding
agreement."

The same author, referring to a decision of the Supreme
Court of the United States in *McMaster v. New York Life
Insurance Co.,* 183 U. S., 25, which might be construed as
militating to some extent against the position maintained
by the author, says: "It is true, as has been heretofore ex-
plained, that there is a tendency on the part of some courts,

in effect, to enforce the equitable remedy of reformation in actions at law upon insurance contracts, when the equitable position of the insured is unusually strong, as when the Supreme Court of the United States held in *McMaster v. New York Life Insurance Co.* that the insured, by accepting a policy, was not conclusively bound by a stipulation inserted therein without his knowledge or consent. But with the exception of such cases, in which the insurer is clearly estopped to insist upon this rule of law, it must be universally held that a writing, accepted as a contract, contains all the terms to which the parties have given their consent and no others."

As a matter of fact, this decision was made, in part, to depend on the correct date when the policies of insurance became effective; and the Court held, that on the face of the policies as they stood they bore date at a time which would enable plaintiff to recover, and no correction was required. The application, made a part of the policy, required a different date—the one contended for by defendant; and in the conflict the Court gave the construction more favorable to the insured, to-wit, the date on the face of the policy, and sustained a recovery at law.

In *Insurance Co. v. Mowry, Mr. Justice Field* states the doctrine we are discussing as follows: "The entire engagement of the parties, with all the conditions upon which its fulfillment could be obtained, must be conclusively presumed to be there stated. If, by inadvertence or mistake, provisions were omitted the parties could have had recourse, for a correction of the agreement, to a court of equity, which is competent to give all needful relief in such cases. But until thus corrected the policy must be taken as expressing the final understanding of the assured and of the insurance company."

In the case before us, then, the written policy having been delivered and accepted, this instrument, as it now stands, expresses the contract of the parties; and as it contains no assurance of indemnity of the kind required to sustain the plaintiff's demand, no recovery can be had unless the policy can be corrected or reformed. And, there being· no allegation or suggestion of fraud, such correction can be obtained, if at all, only on the ground of mistake.

In courts like ours, possessing both legal and equitable jurisdiction, there is no reason why this relief should not be given and damages recovered in the same action. And in some jurisdictions this double relief has been awarded in either courts of law or equity. May on Insurance, sec. 566; Kerr on Insurance, sec. 72. There is no difficulty, therefore, as to the jurisdiction of the Court. But, on the facts presented, is plaintiff entitled to the relief demanded? And here it may be well to note that plaintiff is not seeking to be relieved of his contract relations and recover premiums paid. The relief sought is to correct and reform the instrument and hold the defendant to the contract as corrected.

In the first class of cases, and under certain circumstances, a contract will be set aside for mistake of one of the parties, on the ground that the minds of the parties had never agreed on the same thing at one and the same time. But in the second, in order to reform a contract and enforce it as reformed, it is familiar learning that the mistake must be that of both the parties. To hold otherwise would be not to reform but to make the contract.

As said in Kerr on Insurance, sec. 72, p. 146: "If reformation be sought solely on the ground of mistake, it must appear that the mistake was mutual and common to both parties. A court cannot create for the parties a contract

which they did not both intend to make. A mistake on one side may be ground for rescinding, but not for reforming, a contract."

And it will be noted further that the agent in this case was not a general agent of the company, having power to assume risks and issue policies, as in *Grabbs v. Insurance. Co.,* 125 N. C., 397. In that well-sustained opinion, *Mr. Justice Douglas* shows that the term "general agent" is not defined or affected by the extent of the territory in which he works, but that the term must be referred to the powers exercised in the work which he does. Thus "It is needless to say that the expression 'general agent,' recurring in the above opinion (*Berry v. Insurance Co.,* 132 N. Y.), was used in its legal sense as implying general powers, and not in the geographical sense in which it is usually employed by insurance companies." But in the case here considered it clearly appears that the agent had no such powers. He was an agent with restricted powers. He took applications for insurance and would have at least implied authority to do what was reasonably necessary to carry out this power; but he had no power to issue policies, and there was nothing in this transaction to show that such power was within the scope of his actual or implied authority. When the applications were forwarded, the company issued the policies. The contracting parties were the plaintiff and the company, and to reform the policy there must have been a mutual mistake on the part of both plaintiff and company.

As said in *Cooper v. Insurance Co.,* 50 Pa. St., p. 299: "The evidence was not admissible for the purpose of reforming the policy, for the mistake was not that of both the insured and the company. It is not enough that the agent of the company was also mistaken, for he was not a contracting party; and the mistake was not, therefore, mutual."

There is no evidence here of any mistake on the part of the company, and none tending to show that it did not issue the very policy it intended.

Again: In order to reform a policy by reason of an alleged mutual mistake of the applicant and agent, it should be shown that the contract, as claimed, must be one that the agent had the power to make.

In Joyce on Insurance, vol. 1, sec. 716, the doctrine is stated as follows: "Where an agent is authorized to act in the premises, and, through his mistake or fraud, the policy fails to express the real contract between the parties; or if, by inadvertence or mistake of the agent, provisions other than those intended are inserted, or stipulated provisions are omitted, there is no doubt of the power of a court of equity to grant relief by reformation of the contract. * * * But where an agreement made with an agent is not one he had the authority to make, and its terms are not communicated to or accepted by the principal, and is not a binding contract between the parties, there can be no reformation." Citing *Fowler v. Insurance Co.,* 28 L. J., Chan., 225. See, also, *Fleming v. Insurance Co.,* 42 Wis., 615.

The defendant, in its answer, alleges that the contract claimed by the plaintiff was one that its agent had no authority to make. And this being an agency with special and limited powers, we think the burden is on the plaintiff to show that the contract was within the agent's power, real or apparent. *Biggs v. Insurance Co.,* 88 N. C., 141; *Bank of Morganton v. Hay,* 143 N. C., 326, 55 S. E., 811.

There is also strong authority for the position that on the facts of this case the relief sought would not be open to plaintiff even if there had been a mutual mistake in the preliminary bargain, and by persons with full power to contract, for the reason that plaintiff accepted the policy with

the alleged stipulation omitted without having read same, and held it without a protest for three months.  *Upton v. Triblecock,* 91 U. S., 45.

It is certainly the general rule that where a person of mature years and sound mind, who can read or write, signs or accepts a deed or formal written contract affecting his pecuniary interests, there being no fraud or artifice to mislead him, he will be conclusively bound by its terms.  And in a well-considered case in Wisconsin, *Bostwick v. Insurance Co.,* reported in 92 North Western, the position is maintained that unless there has been some fraud or deceit practised, or something done or said to put a party off his guard at the time the written document is delivered and accepted, it is his duty to read it; and that he is not relieved of this duty by the mere fact that a policy is sent which differs from one that has been agreed upon by him and the company's agent.

There is some conflict in the cases, however, on this point; and we rest our decision on the grounds first stated:

1. That no mistake is alleged on the part of the company, and therefore the mistake is not mutual.

2. That there is no evidence tending to show that the agent had any power to make the contract as claimed by plaintiff.

The case of *Gwaltney v. Insurance Co.,* 132 N. C., 925, cited and relied upon by plaintiff, does not apply here.  That was a case to recover premiums on the ground that the contract of insurance had been wrongfully broken by the company.  The suit was not to reform the contract, but proceeded on the idea that the contract had terminated, and the question of mutual mistake was not involved.  Furthermore, the agent in that case was said to be one having general powers, and his acts, relied upon to sustain a recovery, were within the scope of his real or apparent authority.

144—16

We think the Judge below gave a correct intimation that, on the facts presented, plaintiff has established no right to relief, and the judgment below is affirmed.

Affirmed.