ANNIE C. GRAHAM v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

(Filed 30 October, 1918.)

1. **Insurance—Principal and Agent—Local Agent—Implied Authority.**

   A local agent of an insurance company has no implied authority to bind the company to provisions or options not contained in the policy as afterwards written and properly issued and accepted by the insured.

2. **Insurance—Prior Transactions—Merger.**

   Transactions leading up to the issuance of a policy of life insurance merge therein upon its issuance and acceptance by the insured, and, under our statute, the terms and conditions of the insurance must be plainly·

expressed in the policy as issued. Chapter 54, Public Laws of 1899; Pell's Revisal, sec. 4775.

3. Same—Principal and Agent—Local Agent—Options— Estimates— Policy Contracts.

Estimates of the value of options made up by the local agent of a life insurance company, filled in by him on a printed form furnished by the company, unknown to or unauthorized by its proper officials, or included within the terms, or referred to or attached to the policy thereafter issued, are not binding as a part of the policy contract.

4. Insurance— Reformation of Contracts— Equity — Principal and Agent— Local Agents.

Evidence tending to show that the local agent of a life insurance company had furnished the insured his estimate of value of certain options contained in the policy thereafter issued by filling out spaces left in printed forms sent out by the company, and without evidence that its proper officials either knew of or ratified them, is not sufficient in a suit to reform the policy for mutual mistake or fraud.

5. Insurance—Principal and Agent—Local Agent—Options—Policy Contract —Statutes.

The exercise of an option given by a mutual life insurance company to one of its policyholders of greater value than that given to the others is an illegal and void discrimination, prohibited by our statute and general principles of law.

6. Insurance—Reformation of Contracts—Equity—Laches.

Where the plaintiff has accepted a policy of life insurance and kept it for fifteen years without objection, she has lost, by her laches, the equitable right to have it reformed for fraud or mistake.

CLARK, C. J., did not sit in this case.

ACTION tried before *Bond, J.,* at May Term, 1918, of ORANGE.

The court, at conclusion of the evidence, rendered the following judgment:

"This cause coming on to be heard, all parties being before the court, upon consideration of the pleadings and the relief demanded, it appears the defendant company now and at all times had admitted the rights of the plaintiff to be exactly as provided in the policy issued, and plaintiff claims the right to certain additional relief not provided for by the terms of the written policy, but based on a paper not attached to or referred to in said policy, but which paper was sent to plaintiff's father 5 November, 1901, by agent of company.

"The court is of opinion that the action is one brought to reform a written contract by inserting in it additional provisions alleged to have been omitted by mutual mistake of the parties.

"At the close of the plaintiff's evidence, defendant moves for judgment as of nonsuit. After considering the evidence and argument, the court is of the opinion that there is no evidence tending to prove any omission

in the policy of any provision by mistake of the parties, and is further of the opinion that if any such mistake had been made, the action to reform said policy, if any cause of action existed, is barred by the statute of limitations.

"It is further adjudged, ordered and decreed that the motion by the defendant for judgment as of nonsuit be and the same is hereby allowed and sustained, and judgment as of nonsuit is hereby entered as to plaintiff's action."

Plaintiff appealed.

*V. S. Bryant, John W. Graham, P. C. Graham, and A. H. Graham* for plaintiff.

*James M. Pou and S. M. Gattie* for defendant.

BROWN, J. The basis of this action is an insurance policy, denominated a guaranteed, compound interest, gold bond, limited payment, dated 6 November, 1901, maturing in fifteen years, and issued upon the life of plaintiff. The specific relief demanded is "That the guaranteed cash value of the policy may be surrendered to purchase a paid-up participating gold-coin policy for $10,000, and that the company pay thereon an annuity for her life from 6 November, 1915, equal to 3 per cent, or $300, and that the surplus, as apportioned, be paid in gold coin; that if necessary, the policy be reformed to include these guarantees, which were the foundation of the contract of insurance and omitted from the policy because of mutual mistake."

The defendant denies that the contract contains any guarantee of a participating gold-coin policy for ten thousand dollars, together with a further guarantee of a life annuity of 3 per cent, or three hundred dollars thereon, and avers its readiness at all times to discharge the conditions of the policy as written.

It is admitted that the policy dated 6 November, 1901, contains no such provision, but the plaintiff relies upon a printed paper (Exhibit 2) with figures in writing made out by the local agent of defendant at Durham, Mrs. Annie C. Wall. This paper has no date, but was enclosed in a personal letter to Major John W. Graham, plaintiff's father, dated and postmarked 5 November, 1901, and addressed to Hillsboro, N. C. The paper was never seen or signed in writing by any officer of the defendant. When the policy of insurance was received by Major Graham he filed the paper with it, and there it has remained until the fifteen years expired. There is no evidence that during all that period any officer or general agent of the defendant had any knowledge of it.

The policy itself is duly signed in writing by the president and secretary of the defendant, but the paper is not signed in writing by any

one. It has the name of W. J. Easton, secretary, printed at bottom in ordinary type and of Richard A. McCurdy, president, in large print across the top. On the back of it there are the words "Illustrations of options," and then follows six options with figures as to how they would "pan out." All the figures were made by Mrs. Wall. On the back appears the following in red ink: "It is understood by the holder hereof that the figures inserted in the example as indicating former (surplus) results are for the purpose of illustration only. They are adapted from the experience of the company in the past and are not pledges of future settlements. All that the company guarantees in respect to the surplus on this policy is that it will award the amount actually earned, be it more or less."

1. We are of opinion that upon the evidence the paper constitutes no part of the insurance contract.

It is not referred to in the policy and was not even attached to it, and there is no evidence that it was ever seen or ratified by any officer of the defendant. *Stone's case,* 34 N. J. Law, 371; *Hill v. Ins. Co.,* 146 Iowa; *Untermyer v. Ins. Co.,* 113 N. Y. Supp., 221.

There is no evidence that the local agent had the authority to bind the company by it, assuming that it is contractual in form, which it is not. It appears on its face to be an illustration of what the insured may reasonably expect the several options will yield as figured out by Mrs. Wall. No one claims or even hints that Mrs. Wall knowingly perpetrated a fraud, but it is evident she made an honest mistake in her calculations. She was furnished with the usual insurance literature, and among which was a lot of printed forms of Exhibit No. 2. She was also furnished a rate book, and from this rate book she would fill in illustrations and examples under the guarantees. It was impossible to furnish printed literature with the amounts all printed. The policies varied in amount, and the values varied with the ages of the insured. The local agent in canvassing for insurance would take the literature and fill in from the rate book the figures applicable to the amount and age of the person canvassed.

Mrs. Wall had no authority to bind the defendant by this paper even if it were a contract in form. She was a mere local soliciting agent with no power to bind her principal. Such agency is one of limited powers, as shown by the agency contract between Mrs. Wall and defendant. 17 Cyc., 475 (3); *Gwynn v. Setzer,* 48 N. C., 383; *McFarland v. Patton,* 4 N. C., 421.

The plaintiff has failed to show any authority upon part of Mrs. Wall to make the guarantees claimed. As is said by *Ruffin, J.,* in *Biggs v. Ins. Co.,* 88 N. C., 141: "Where one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to con-

tract. Under any other rule, every principal would be at the mercy of his agent, however careful he might limit his authority." *Bank v. Hay,* 143 N. C., 326; *Floars v. Ins. Co.,* 144 N. C., 232.

Assuming that Mrs. Wall undertook to make a definite contract with plaintiff when she filled out this printed form and mailed it to Major Graham, it was prior to the issuing of the policy by the officers of defendant and it merged into it. The written policy accepted by plaintiff stands as embodying the contract, and the rights of the parties must be determined by its terms until the contract is reformed by the Court. *Floars v. Ins. Co., supra.*

It would seem that plaintiff's contention is in the teeth of the statute law in this State in force at the time the policy was issued. Chapter 54, Public Laws of 1899, was in force at and before this policy of insurance was issued. It provides that no life insurance company, or agent thereof, could make any contract of insurance or any agreement as to any contract of insurance other than as it were plainly expressed in the policy. This statute has continued since 1899, and is now section 4775 of Pell's Revisal.

The case of *Gwaltney v. Ins. Co.,* 132 N. C., 925, has no application, as that was decided upon a policy of insurance issued prior to the act, and also differs from this case, as here there is no allegation of fraud.

2. We are also of opinion that there is no ground disclosed upon which plaintiff can have the policy reformed.

This could only be decreed upon clear, cogent and convincing proof that the paper (Exhibit 2) was agreed upon between the authoritative officers and plaintiff; that it was omitted from the policy by mutual mistake or by the fraud of defendant and the mistake of plaintiff. This is elementary. There is nothing in the evidence that even gives color to such contention. The mistake of the soliciting agent which the defendant did not authorize or ratify cannot be imputed to it. *Floars v. Ins. Co., supra.*

The policy was delivered to plaintiff's father, an able and distinguished lawyer, who was plaintiff's agent, who already was in possession of Exhibit 2, a paper which no officer of the defendant ever saw. By reading the policy, he could readily discover that no such provision was in it, and that the character of the policy was incompatible with any certain assured amount of dividend payable to the insured at the termination of the accumulative period. It was his duty to return it to defendant at once and decline to accept it. Instead of doing so, he kept the policy for fifteen years without taking any action to enforce plaintiff's supposed rights. Plaintiff has slept on her rights, if she had any. *Upton v. Triblecock,* 91 U. S., 45; *Floars v. Ins. Co.,* 144 N. C., 241.

There is another very cogent reason why Exhibit 2 cannot be incorporated in the policy. There are doubtless many policies of the character of the one sought to be reformed extant and in force in this State. To reform this policy by decreeing Exhibit 2 to be a part of it would give plaintiff an undue advantage over others holding similar policies and would be an illegal discrimination in her favor at variance with our statutes as well as the general principles of law.

The defendant is a mutual company and is forbidden to discriminate among its policyholders, and any agreement which would result in the payment of larger proportionate dividends to one of its policyholders than to others in the same class would be illegal and void. *Orange v. Penn. Mutual Ins. Co.*, 235 Penn. St., 321, and cases cited.

The judgment is
Affirmed.