MARK BURTON v. LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE.

(Filed 19 March, 1930.)

1. **Insurance E b—Policy of insurance merges all prior agreements and stands as contract of parties until reformation.**

A policy of insurance indemnifying against loss caused by specified accidents will stand as the contract of the parties, merging all prior parol agreements therein, until reformed for fraud or mutual mistake, which must be established by the plaintiff by clear, cogent, and convincing proof.

**2. Insurance E c—To recover for injury not covered by policy allegation of fraud and issue on reformation are necessary.**

In order to reform a contract of accident insurance for fraud or mistake it is necessary for the plaintiff in the suit to allege and prove the fraud or mistake and have issues passed upon by the jury, and where the action is founded only on the allegation and evidence of the fraud and deceit without the necessary prayer for, and issue on reformation, the plaintiff may not recover for an injury from an accident not covered by the policy, and the courts will at most place the parties in *statu quo* by reimbursing the plaintiff for the premium paid with interest.

CIVIL ACTION, before *Stack, J.*, at May Term, 1929, of MECKLENBURG.

The plaintiff alleged that on or about November, 1924, the defendant, through its agent, sold to him a certain accident insurance policy known as the "Industrial Travel and Pedestrian Policy." That thereafter, as a result of negotiations, the defendant company issued to the plaintiff one accident policy of insurance known as the "Standard Industrial Travel and Pedestrian Policy." Plaintiff alleged that the agent represented to him that this policy provided an indemnity of $500 against loss of either eye from "any cause."

Plaintiff further alleged, as a second cause of action, that in November, 1927, the agent of the defendant again solicited him to purchase an accident policy of insurance, and that thereafter the defendant issued its "Standard Travel and Pedestrian Policy." The plaintiff alleged that the agent represented that the second policy would provide "a benefit to him of $1,250 for the loss, by any cause, of either eye, foot, or hand, and certain other benefits for other physical injuries."

Plaintiff further alleged that he was unable to read and accepted both of said policies, believing that they contained provisions as represented by the agent of defendant. It was alleged that in 1928 "plaintiff lost the sight of his left eye, for all practical purposes, when he was hit in the eye, by a police officer, with a blackjack."

The first policy required the payment of a weekly premium of five cents and provided a benefit of $500 for the loss of either eye "if the insured be struck or knocked down or run over while walking or standing on a public highway by a vehicle, propelled by steam, cable, electricity, naphtha, gasoline, horse, compressed air, or liquid power—or by the collision of or by any accident to any railroad passenger car or passenger steamship or steamboat, in or on which such insured is traveling as a fare-paying passenger; or, by the collision of or by any accident to any public omnibus, street railway car, taxicab, or automobile stage, or by any accident to any private horse-drawn vehicle, or motor-driven car in which insured is riding or driving; or, if the insured shall, by being accidentally thrown from any such vehicle or car, suffer any of the specific losses set forth below," etc.

The second policy required an annual premium of $5 and provided a benefit of $1,250 for the loss of either eye and contained the same cover-age clause as the first policy above, and in addition thereto, contained a clause covering injury to a "telegraph or other messenger boy," etc.

Plaintiff further alleged that after sustaining the injuries alleged, he discovered that the policies which he held were totally different from those represented to him by the agent of the defendant at the time he acquired the insurance, and that the representations so made were false and fraudulent, intended to deceive, were reasonably relied upon, and did deceive the plaintiff.

Whereupon, plaintiff prayed judgment for the sum of $1,750, same being the indemnity provided in both policies.

The defendant denied that any false representations were made, and asserted that the plaintiff received the identical policies applied for, and that the agent had no authority to contract for a policy of insurance other than that authorized by the defendant.

The evidence disclosed that the plaintiff had paid in premiums on both policies the sum of $20.40.

The issues and answers thereto were as follows:

1. "Did the defendant, through its agent, represent to the plaintiff that it could and would issue to the plaintiff insurance policies contain-ing the provisions set forth in the complaint, to wit, a benefit of $500 for the loss of an eye, by any cause, and a benefit of $1,250 for the loss of an eye by any cause?" Answer: "Yes."

2. "If so, were such representations false and made for the purpose of deceiving the plaintiff?" Answer: "Yes."

3. "If so, were such representations relied upon by the plaintiff?" Answer: "Yes."

4. "If so, was the plaintiff induced thereby to enter into said con-tracts of insurance?" Answer: "Yes."

5. "What amount is the plaintiff entitled to recover of the defend-ant?" Answer: "$20.40 with interest."

The court instructed the jury to answer the fifth issue $20.40 with interest.

From judgment upon the verdict the plaintiff appealed.

*G. T. Carswell and Joe W. Ervin for plaintiff.*
*Hamilton C. Jones for defendant.*

BROGDEN, J. (1) Can an illiterate insured, receiving certain written policies of insurance not covering his injury, recover benefits falsely and fraudulently represented to be contained in the policies, without reform-ing the contracts?

(2) Can such contracts be reformed by a mere showing of fraud and without any allegation or issue warranting reformation and without a prayer for such relief?

*Justice Hoke,* delivering the opinion in *Floars v. Insurance Co.,* 144 N. C., 232, 56 S. E., 915, wrote: "It is also accepted doctrine that when the parties have bargained together touching a contract of insurance, and reached an agreement, and in carrying out, or in the effort to carry out, the agreement a formal written policy is delivered and accepted, the written policy, while it remains unaltered, will constitute the contract between the parties, and all prior parol agreements will be merged in the written instrument; nor will evidence be received of prior parol inducements and assurances to contradict or vary the written policy while it so stands as embodying the contract between the parties. Like other written contracts, it may be set aside or corrected from fraud or for mutual mistake; but, until this is done, the written policy is conclusively presumed to express the contract it purports to contain." *Hollingsworth v. Supreme Council,* 175 N. C., 615, 96 S. E., 81; *Graham v. Ins. Co.,* 176 N. C., 313, 97 S. E., 6; *Elam v. Realty Co.,* 182 N. C., 599, 106 S. E., 632.

In the *Graham case, supra,* the Court remarked: "The written policy accepted by plaintiff stands as embodying the contract, and the rights of the parties must be determined by its terms until the contract is reformed by the court."

In the case at bar the plaintiff does not ask that the policy be reformed so as to provide the specified benefit "for the loss, by any cause, of either eye," etc. In other words, he sues for benefits provided in policies of insurance which limited the benefit to certain specific causes, and yet seeks to recover without reforming the policy the same benefits accruing by reason of accidental injury to his eye from any cause whatsoever. The question, then, is whether a contract of insurance can be reformed and enforced as reformed without appropriate allegation, issue, or prayer for relief. The identical question was considered by this Court in *Britton v. Insurance Co.,* 165 N. C., 149, 80 S. E., 1072. The Court said: "But the reformation is subject to the same rules of law as applied to all other instruments in writing. It must be alleged and proven that the instrument sought to be corrected failed to express the real agreement or transaction because of mistake common to both parties, or because of mistake of one party and fraud or inequitable conduct of the other." *Pate v. Lumber Co.,* 165 N. C., 184, 81 S. E., 132. Again in *Mfg. Co. v. Cloer,* 140 N. C., 128, 52 S. E., 305, the Court declared: "Defendants do not pray for a reformation of the deed as they should have done, but the court would award it if the allegations of the answer and the findings of a jury upon appropriate issues justified it."

It is perhaps well to note that in the *Cloer case* there was allegation warranting reformation, but no issue was submitted to the jury upon that phase of the case. The same idea is expressed in *Webb v. Borden,* 145 N. C., 188, 58 S. E., 1083, in which the Court declared: "While, under The Code system of procedure, it is settled by many decisions of this Court that, in an action for the recovery of land, the plaintiff may, by proper averments, invoke the equitable power of the court to reform a deed in his chain of title, he must make the essential averments, so that the defendant may either admit or deny them, and an issue may be framed presenting the controversy in that respect." *Welch v. Ins. Co.,* 196 N. C., 546, 146 S. E., 216. The legal requirement of appropriate allegation, prayer, or issue as a basis for reformation doubtless rests upon the fact that a higher degree of proof is required to warrant such relief. It is accepted law in this jurisdiction that, in order to reform a written instrument, the proof must be clear, cogent, and convincing. *Floars v. Ins. Co.,* 144 N. C., 232, 56 S. E., 915; *Graham v. Ins. Co.,* 176 N. C., 313, 97 S. E., 6; *Lloyd v. Speight,* 195 N. C., 179, 141 S. E., 574.

In the case of *Newton v. Clark,* 174 N. C., 393, 93 S. E., 951, *Allen, J.,* writing for the Court, said: "There is neither allegation nor proof that the deed which the plaintiff asked to have reformed was not executed as it was intended to be, or that the clause of defeasance was omitted by reason of ignorance, mistake, fraud or undue advantage, and this, under our authorities, is fatal to the plaintiff's action."

The principle was also tersely stated by *Walker, J.,* in *Ricks v. Brooks,* 179 N. C., 204. The Court said: "In an action for reformation it must be alleged and shown, by evidence, clear, strong, and convincing, that the instrument sought to be corrected failed to express the true agreement of the parties, because of a mistake common to both parties, or because of the mistake of one party induced by the fraud or inequitable conduct of the other party, and that by reason of ignorance, mistake, fraud, or undue advantage something material has been inserted, or omitted, contrary to such agreement and the intention of the parties."

It would seem to be apparent from the pertinent decisions of this Court that the case at bar was not instituted or tried upon the theory of a reformation of the contract of insurance which is the subject of the controversy.

The plaintiff relies upon *Sykes v. Ins. Co.,* 148 N. C., 13, 61 S. E., 610. In the statement of facts in that case the Court says: "This action was brought to recover the amount of premium paid by the male plaintiff to the defendant on certain insurance policies described in the pleadings." That case was tried solely upon that theory. It is true that the opinion declared: "Plaintiff recovered according to the reformed con-

tract, and therefore can only have four per cent interest on the premium." And hence it is contended that the *Sykes case* is authority for the position that reformation may be decreed without allegation, prayer or issue, and without requiring the party seeking reformation to establish his rights by clear, strong, and convincing proof. This, of course, is an extreme interpretation, but if the decision is susceptible of such interpretation, a long line of decisions of this Court are to the contrary. Moreover, without attempting to distinguish the *Sykes case,* the pleadings in the case at bar present a cause of action for fraud and deceit. The case was tried upon that theory, and that was the only theory presented to the jury by the trial judge. Hence, as the record now stands, the charge was correct.

No error.