## NEW YORK LIFE INS. CO. v. GUYES.

District Court, M. D. North Carolina, Greensboro Division.

March 16, 1938.

Smith, Wharton & Hudgins, of Greensboro, N. C., for plaintiff.

Hobgood & Ward, of Greensboro, N. C., and Guthrie & Guthrie, of Durham, N. C., for defendant.

HAYES, District Judge.

This is a suit brought by the New York Life Insurance Company to cancel a policy of life insurance written on the life of Samuel W. Guyes. The defendant is a resident of the state of North Carolina and the policy of insurance was delivered to him here in this state. The original policy was issued on September 11, 1931, pursuant to a written application thereto attached and made a' part thereof. The premium on the policy was $189.60 for $5,000 of life insurance with a double indemnity and provisions for waiver of premium and disability benefits in the sum of $50 per month in the event of total and permanent disability. A charge of $25.05 of that premium was used for the disability benefits. The policy contained this clause, "The policy and the application therefor, a copy of which is attached hereto, constitute the entire contract. All statements made by the insured shall, in absence of fraud, be deemed representations and not warranties, and no statement shall avoid the policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is endorsed upon or attached to this policy when issued." It also contained another provision as follows: "If the age of the insured has been mis-stated, the amount payable hereunder shall be such as the premium paid would have purchased at the correct age."

Later the anniversary date of the policy was changed to December 11th and the adjustment in premiums was made.

The premium due on December 11, 1932, was not paid and the period of grace expired January 12th. On January 14, 1933, the defendant made a written application to reinstate the old policy and in this application for reinstatement he represented that he was in the same condition of health as he was when the policy was issued and that he had not suffered any illness or disease or bodily injury within the two years preceding January 14th, nor consulted any physician or been treated by one within that time, and certified that his answers were full, complete, and true, when in fact the representations were untrue, in that he had suffered with a disease or diseases which were causing him to be very nervous and to suffer with intense headaches, known as migraine, which occurred at intervals and culminated in such severity that opiates had to be taken in order to provide relief; and while he had not consulted a physician or physicians within the strict meaning of the term, nevertheless, his condition was such that he was not an insurable risk and an

insurance company would not have written a policy on him if it had known his true condition; the plaintiff relied on his representations and reinstated his policy on the strength thereof.

On July 21, 1933, the insured discovered that a mistake was made in his age. That the policy read him at the age of 39 when his correct age was 38 and he requested the company to forward him the necessary blanks so as to correct that mistake; the company sent him the blanks and on the 15th day of November, 1933, he forwarded to the company the blank properly executed in which he "requested to change policy number 11566168 to correct age 38 for $5162.00, the amount of insurance which the premium paid would purchase at said age, I was born December 26, 1893." On November 21, 1933, the plaintiff wrote a new policy, but giving it the same number as that of the old policy and correcting his age at 38 and changing the amount of the insurance from $5,000 to $5,162 and letting the policy take effect as of the 11th day of September, 1931, and attached thereto the copy of the original application, and the request to make the necessary corrections on account of the age which has been set out above. But the company did not attach to the policy a copy of the application to reinstate the old policy.

The defendant paid the premium that fell due in December, 1933, and in 1934 he filed an application for total and permanent disability benefits and in this application for disability benefits he stated that his illness began about January 1, 1933, and that he had been treated by Dr. W. T. Cox of Greensboro in response to the question for him to give the name and address of the physician who had been consulted at the beginning of the illness. The company conducted an investigation and found that the defendant had been treated in the fall of 1932 by Dr. Cox for his nervous breakdown and unbearable headaches and some type of focal infection; that Dr. Cox, the Osteopath, had caused the defendant to have his teeth X-rayed; and that Dr. Sykes found he had four abscessed teeth which the defendant did not have extracted and that this occurred prior to the time that he filed his application to reinstate his insurance. Promptly upon discovering these facts the company notified the insured that the policy had been reinstated on the strength of false statements which he made concerning his health and canceled an indebtedness which he owed on it and remitted to him a check for the premiums which had been paid with interest since the reinstatement of the policy, which, of course, the defendant refused to accept. Thereupon the defendant filed a bill in equity in this court to cancel the policy and paid in the court the sum of $225 to cover the premium with interest from the time of the reinstatement of the policy.

The policy contained a clause making it incontestable after two years from its issue. The defendant denied that there was a sufficient amount in controversy to give this court jurisdiction on the ground of diversity of citizenship and pleaded the failure of the insurance company to attach the application to reinstate the old policy to the new policy when issued and objected to the introduction of that statement or any evidence in relation thereto on the ground that it was incompetent by reason of its not being attached to the policy.

It is the contention of the defendant that the present policy bearing date of November 21, 1933, is a new and independent contract and that no statement or agreement pertaining to said contract is admissible in evidence or can be regarded as a part of the contract, unless and until the same is attached to and made a part of the policy when written. There is no merit in the contention that the amount involved is not sufficient to give this court jurisdiction, for the face of the policy itself constitutes the amount that is involved and not the mere installment that might have been due at the time of the filing of the bill.

North Carolina Code, § 6458, provides, among other things, in dealing with the privileges of insurance companies to do business in North Carolina, "nor shall any such company or any agent thereof make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon." Under the law of North Carolina as declared by the Supreme Court of this state, it is held that an oral contract of insurance would be upheld as a general rule, yet when such contract is in the form of a written policy subsequently accepted by the insured, the oral contract merges into the written one and the written policy stands as embodying the contract, the rights of the parties must be

determined by its terms and conditions Floars v. Insurance Company, 144 N.C. 232, 56 S.E. 915, 11 L.R.A.,N.S., 357. The purpose of this statute is to require all of the contracts between the parties to be set forth in the policy and to afford protection to the policyholder, Smathers v. Insurance Company, 151 N.C. 98, 65 S.E. 746, 18 Ann.Cas. 756; thus it has been held that a collateral agreement delivered with the policy but not attached to nor made a part thereof is unenforceable at the instance of the insured, Graham v. Insurance Co., 176 N.C. 313, 97 S.E. 6. If the application to reinstate is to be attached to the policy in order to be effective, it is doubtful if the plaintiff would have any right under the facts and circumstances of this case to reform the policy by adding it thereto, and then seeking its cancellation. Floars v. Insurance Co., supra; Moore v. Casualty Co., 207 N.C. 433, 177 S.E. 406; Hayes v. Traveler's Ins. Co., 10 Cir., 93 F.2d 568.

■ If the new policy dated November 21, 1933, had not been issued and the suit were brought by the reinstated policy for the purpose of canceling the same, there is no doubt in my mind about the fact that it would not be necessary to have the application to reinstate attached to the original policy in order to cancel the contract on the ground of fraud perpetrated in the application to reinstate. For in that event we would be dealing only with the old policy and on the validity of the contract made for its reinstatement. The application to reinstate containing the representations of the defendant's insurability, together with the payment of the premium, constituted the consideration upon which the company reinstated the original policy and put it into force. It would seem too clear for argument that under such circumstances where the consent of the company was obtained by such misrepresentations it would have the privilege to rescind its action of reinstatement by acting promptly upon discovery of the fraud. Moreover, it would be impractical to attach the application to reinstate to the policy when issued within the meaning of the statute of North Carolina for the application to reinstate had not come into existence when the policy itself was issued and the statement itself goes to the validity of the reinstatement and not to terms of the policy contract. This view finds support in New York Life Insurance Co. v. Rosen, 255 N.Y. 567, 175 N.E. 316; Axelroad v. Metropolitan Life Ins. Co., 267 N.Y. 437, 196 N.E. 388 and in the recent case of New York Life Ins. Co. v. Odom, 5 Cir., 93 F.2d 641; New York Life Ins. Co. v. Buchberg, 249 Mich. 317, 228 N.W. 770, 67 A.L.R. 1483; National Life & Accident Ins. Co. v. Nagel, 260 Mich. 635, 245 N.W. 540; Duncan v. Penn Mutual Life Ins. Co., 17 Tenn.App. 62, 65 S.W.2d 882. Compare Washington Fidelity Ins. Co. v. Burton, 287 U.S. 97, 53 S.Ct. 26, 77 L.Ed. 196, 87 A.L.R. 191.

The case of Archer v. Equitable Life Assur. Co., 218 N.Y. 18, 112 N.E. 433, is to be distinguished from the above cases on the ground that the application itself was not attached to the policy and made a part thereof and was therefore not available because it violated the New York statute. But it was the application upon which the insurance policy was issued and not an application to reinstate the policy.

■ The materiality of the answers to the questions contained in the application to reinstate is a matter of law and, being untrue, they constitute the ground for avoidance of the policy if the application to reinstate is available without being attached to the new policy. Fountain & Herrington v. Mutual Life Ins. Co., 4 Cir., 55 F.2d 120; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 103 A.L.R. 171.

■ If the new policy constitutes a new and independent contract, then it seems to me the application to reinstate the policy should have been attached to the new contract. In that case the statements concerning his insurability were far more vital and important than those contained in the original application, and if the company wanted to avail itself of the privilege to avoid the policy on the strength of the statement therein contained, then those statements should have been attached thereto and made a part of the policy when issued. The purpose of the statute in North Carolina as well as the clause in the contract are to require the parties to incorporate in the contract of insurance anything which may pertain to the validity of the contract at the time it is written. Washington Fidelity Ins. Co. v. Burton, supra. It would be unfair to the insured to omit it and in such case there would be no valid reason or excuse for failure to attach it.

This brings us to the question which is decisive of the case: Is the new policy a new and independent contract or a mere substitution and continuation of the old? The new policy is issued upon the sole consideration of the premiums previously paid on the old policy. The new policy takes effect as of the date of the old policy and bears the same number as the old policy. It contains the same identical provisions as the old policy and provides for the same benefits and it differs from the old policy only in the respect that the age is carried at 38 instead of 39 and the face of the policy is changed from $5,000 to $5,162. In determining whether the new policy constitutes a departure from the old and creates a new contract, we must recur again to the provisions of the old policy and there we find the provision that if there is a misstatement of the age the policy will be corrected so as to provide whatever amount of insurance the premium paid would purchase at the correct age. If there had been no new policy issued for the old one, the insured could have recovered the same identical benefits under the old policy that he is entitled to recover under the new upon proof that a mistake had been made in his age. When therefore the new policy was issued to correct the mistake of age, it did not introduce into the contract a new element of insurance, although it did fix the amount in the sum of $162, but this amount could have been recovered under the old policy if loss had occurred before the new policy was issued. It seems reasonable therefore to conclude that the new policy is not a new contract, but is merely a continuation by way of substitution of the old contract. A contrary view would be in disregard of the law in Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S. Ct. 129, 69 L.Ed. 342.

It follows therefore if the new policy is not a new contract but is a mere continuation of the old, then it was not necessary to attach the application to reinstate to the new policy in order for the company to avail itself of the misstatements made therein. The infirmity of the old reinstated policy followed and entered into the new policy, and, since the vitality of the new policy depends entirely upon the validity of the old policy, the new policy is subject to the same weakness or defense available against the reinstated policy. The false statements contained in the application to reinstate about facts

which were material to the risk gave the company the right to cancel the old policy, but inasmuch as it did not discover the falsity of those representations until after it had reissued the substituted policy and acted with promptness to rescind the substituted policy upon discovery of the falsity of those statements and returned the premium with interest which it had received at the time of reinstatement, the company is likewise entitled to a cancellation of the substituted policy and it will be so ordered. Wallach v. Aetna Life Ins. Co., 2 Cir., 78 F.2d 647.