## JONES v. BANKERS LIFE CO.
### No. 4974.

United States Circuit Court of Appeals,
Fourth Circuit.

Nov. 12, 1942.

Jesse A. Jones, of Kinston, N. C. (John Hill Paylor, of Farmville, N. C., on brief), for appellant.

J. L. Emanuel, of Raleigh, N. C. (Pou & Emanuel, of Raleigh, N. C., and Dwight Brooke, of Des Moines, Iowa, on brief), for appellee.

Before PARKER, DOBIE and NORTH-COTT, Circuit Judges.

DOBIE, Circuit Judge.

On February 21, 1941, Zeb B. Jones, appellant (hereinafter called Jones), filed a complaint in the Superior Court of Greene County, North Carolina, against the Bankers Life Company, appellee (hereinafter called Company), alleging that during the month of March, 1936, the Company, in violation of the promises of its agent, Baker, had (1) wrongfully and fraudulently failed to deliver a $5,000 insurance policy on Jones' life, (2) wrongfully and fraudulently cancelled this policy after its issuance, and (3) without the knowledge or consent of Jones, re-issued and delivered this policy to John W. Jones, brother of Zeb B. Jones, as owner-beneficiary. Jones asserts that by reason of the above misconduct of the Company, he was damaged in the sum of $5,000, plus all dividend accretions on the policy, less the amount of the premiums due thereon since March 17, 1936.

The case was removed to the United States District Court for the Eastern District of North Carolina at New Bern, where the Company filed an answer in which it denied the material allegations of the complaint and stated that it offered Jones a second $5,000 policy similar to the $5,000 policy previously issued by it to him, but that Jones refused to accept the second policy. The Company also alleged that Jones thereupon executed a new application in which his brother, John W. Jones, was named as owner-beneficiary, and that a policy to this effect was duly issued and delivered to John W. Jones. The Company then set forth further bars to Jones' claim in the form of special pleas of laches, estoppel, lack of authority on the part of the Company's agent Baker to promise delivery of the policy to Jones, and the Statute of Limitations. At the close of all the evidence, Judge Meekins sustained the Company's motion for a judgment as of nonsuit. Jones has duly taken an appeal to this Court.

■ We are now concerned with the sufficiency of the evidence in the record to entitle Jones to have his case submitted to the jury. Accordingly, we proceed to discuss the facts in detail in order to determine the propriety of Judge Meekins' ruling. In so doing, we shall consider the evidence in the light most favorable to Jones, granting him the benefit of every reasonable inference to be drawn therefrom.

On March 7, 1936, Jones, desiring to obtain $10,000 of life insurance, made application for a $5,000 policy to the Company, through its agent Baker, and for a $5,000 policy to the New York Life Insurance Company, through its agent Carr. The application to the Company was approved and on March 17, 1936, a $5,000 policy (hereinafter called the first policy) in proper form was duly issued to Jones. On March 23, 1936, Baker suggested that Jones withdraw his application to the New York Life Insurance Company and replace it with an additional $5,000 Company policy. Jones agreed to this plan and Baker made the necessary arrangements with the Company. Jones was suffering from an attack of influenza when Baker tendered the second policy to him. Accordingly, Jones refused to accept it and requested Baker to hold it for him until he recovered. Baker consented and stated that the policy could be so held for 60 or 90 days.

Upon his recovery, Jones asked Baker for the policy but Baker replied that when the Company had demanded an explanation for the delay in acceptance, he had returned the policy to the Company stating that Jones was unable to pay the premiums. Baker allegedly made this report because he did not want the Company to know that Jones had been ill. When Jones insisted upon a delivery of the policy, Baker assured him that he had seven months in which to get it without a physical re-examination. Following this assurance, Jones

permitted the matter to remain dormant until October 10, 1936. At that time, Baker showed him a letter from the Company stating that after investigation, the Company did not think Jones was a good insurance risk. Accordingly, the Company declined to accept the supplemental application which Baker had executed for Jones, for a $5,000 policy.

In February, 1937, Jones received two notices from the Company for the 1937 premiums covering each of the two outstanding policies on his life, the one issued in his favor, the other in favor of his estranged brother, John W. Jones. While this appeared strange to Jones, he was seemingly satisfied with Baker's explanation that the second policy "had not been marked off the mailing list." In February, 1938, Jones received two additional notices for the 1938 premiums, covering two policies on his life, but here again he accepted Baker's admonition to pay no attention to the premium notice on the second policy. In neither year did Jones pay the premium on the policy on his life in favor of John W. Jones.

Finally, on April 16, 1940, Jones wrote to the Company, requesting information on the amount of insurance outstanding on his life, the number of each policy, and the names of the beneficiaries. On April 23, 1940, the Company replied that Jones had two $5,000 policies, the second of which entitled John W. Jones to all the rights, privileges and options thereof, and to receive all sums and benefits provided in the policy, without the consent or participation of the insured. An extended correspondence was then carried on between the Company and Jones which seemed to bring certain additional facts to light. The record is confusing and contradictory regarding the true story but we accept as correct the following version advanced by Jones.

Apparently Baker turned the second policy, which Jones had refused to accept during his illness, over to John W. Jones, instead of returning it to the Company for nonpayment of premium, as he had related to Jones. An application purportedly signed by Jones and dated March 17, 1936, was then sent to the Company requesting the issuance of a $5,000 policy on Jones' life, premiums payable by John W. Jones, who was to be the owner-beneficiary of the policy with every right on the part of Jones waived or restricted. Although the signature on the application closely resembles the acknowledged signatures of Jones, he denied ever having signed the application. For the purpose of this appeal, we accept his denial. In due time the Company cancelled the policy Jones had refused to accept, and transmitted a rewritten second policy, drawn in accordance with the application of March 17, 1936, to Baker, with the following letter dated June 16, 1936: "The enclosed policy has been rewritten with the owner and beneficiary John W. Jones, the insured's brother. Future premium notices will be addressed as follows: 'John W. Jones, acc't. Zeb B. Jones, Snow Hill, North Carolina'. We trust these changes are satisfactory."

On August 28, 1936, Jones filed a third application with the Company for a $5,000 policy, wherein he stated that there were then outstanding on his life two $5,000 policies. The Company, by registered mail on October 10, 1936, refused to accept this application on the ground that Jones was no longer a satisfactory risk.

Jones, who is now uninsurable by reason of impaired health, claims that Baker's assurance that the original second policy would be redelivered to him within seven months after March, 1936, without a physical re-examination, lulled him into a sense of false security; that the Company's misconduct in so failing to comply with Baker's promise, deprived him of the opportunity to procure an additional $5,000 of insurance on his life, while he was still insurable.

On the basis of the foregoing facts, the District Court held that Jones had not established a right to relief, and further, that any claim he may have been entitled to, was now barred by the applicable North Carolina three-year statute of limitations. We feel that this decision was eminently sound on both grounds.

There is no suggestion in the record of the instant case that the Company directly participated, or even acquiesced, in the alleged fraudulent acts, or had knowledge of the false statements, attributed to Baker. Accordingly, the only basis for attaching liability to the Company is under the doctrine of respondeat superior. But the maxim that everyone deals with an agent at his peril is applicable to the relationship between an insured and the insurance company's agent. Vance on Insurance, 409. And the law of North Carolina is in accord with the general law in this respect. For example, a mere local solicit-

ing agent has no power to bind his insurance company principal, inasmuch as such an agency is one of very limited powers. Graham v. Mutual Life Insurance Co., 176 N.C. 313, 97 S.E. 6. The law is justly so, for any other rule would place the principal at the mercy of his agent, however careful the principal might be to limit the agent's authority. Biggs v. Insurance Co., 88 N.C. 141.

The undisputed evidence in the instant case indicates that Baker was a soliciting agent for the Company, acting pursuant to a limited contract dated July 22, 1935. The pertinent provisions of this agreement with respect to Baker's restricted authority and duties are as follows:

"Section 1. The Agent is hereby appointed the Agent of the Bankers Life Company with such powers and authority only as are granted herein.

"(a) It shall be the duty of the Agent to solicit applications for life insurance and annuities in the Company in such territory as may be designated from time to time by the Company; to collect and remit promptly to the Company the first premiums on policies issued under such applications; to aid in keeping all business of the Company in force in the territory allotted to the Agent.

"(b) The Agent shall have no authority on behalf of the Company to incur any liability or debt against it, *to accept risk of any kind; revive policies; grant permits; make, alter, authorize or discharge any contract or lease;* to extend the time of payment of any premium; to waive payment in cash; to collect any premiums except those for which policies or official receipts have been sent to him for collection, *or to bind the Company in any way, except as herein expressly stated.*

"Section 32. No act of forebearance or neglect to insist upon the prompt performance of any of the duties of the Agent, expressed or implied, shall be construed as a waiver on the part of the Company of its rights and privileges because of the neglect or failure of the Agent to perform any of said duties, nor shall anything be construed as a deviation from the terms of this contract, or as a waiver of any of the rights or privileges of the Company except a written memorandum in each instance, expressing such deviation or waiver and signed by the President or a Vice-President of the Company." (Italics ours.)

In the light of the implicit restrictions in this agreement and the law applicable thereto, we fail to see how we can impute the alleged fraud of Baker to the Company. See, further, Jones v. Gate City Life Insurance Co., 216 N.C. 300, 4 S.E.2d 848; Turlington v. Metropolitan Life Insurance Company, 193 N.C. 481, 137 S.E. 422. We are not unmindful of the rule that the relationship between insured and insurer should be characterized by the exercise of mutual good faith and that it is the duty of the company to advise the insured of his rights and the status of his policy at all times.

With respect to the second policy, however, this principle has no application, for the insured had made no application for that policy. The Company tendered it to Jones as additional insurance, and this tender constituted no more than a mere offer on its part. Certainly, there could be no liability on the part of the Company for deceitful conduct on the part of its agent which merely prevented the offeree from accepting the offer. This is true for two reasons. In the first place, such deceitful conduct was not in furtherance of the Company's business, and no basis is provided for the operation of the rule respondeat superior. And, in the second place, since there was no acceptance of the offer, there was no ground for assessing damages by reason of the loss of the contract, which had not come into existence and consequently could have had no cash value. It will not do to say that there was a contract to keep the offer open, for the agent had no express or implied power to make such a contract and had not been clothed by the Company even with apparent authority to make the same. It is elementary that he who deals with an agent must look to his authority.

Similarly, we recognize the doctrine that a principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons, is subject to liability to such third persons for the fraud of the agent. See American Law Institute Restatement, Agency § 261.

This principle, however, has no application here, for the reason that the Company had not put the agent in a position to commit a fraud with respect to an agreement to hold open an offer to deliver a policy for which no application had been

made. If the delivery of the policy to J. W. Jones with concealment of that fact from Jones be deemed a fraud, it was a fraud, not on Jones, but on the Company; for, so far as Jones was concerned, the loss, if any, that he has suffered was not in the making of the contract with J. W. Jones but in the refusal to make the contract with him, and he had no right to the contract in the absence of acceptance of the Company's offer. A different situation would be presented if Jones had made application for the policy and it had been issued and placed in the hands of the agent for delivery pursuant to the application. We have no occasion to discuss the principles which would apply in such a situation.

However, we do not feel that these principles fit the facts of the instant case. The situation is rather one wherein Jones closed his eyes to the circumstances which were known to him, or observable by ordinary attention, thereby attempting to gain for himself an advantageous position as a result of his ignorance. We refuse to vindicate his honesty, at the expense of his intelligence.

And in this connection we shall now discuss the second defense of the Company, namely, the statute of limitations. The applicable North Carolina statute of limitations for actions predicated on fraud is three years from the time the injured party either knew of the fraud or by the exercise of reasonable care could have discovered the fraud. North Carolina Code, § 441 (9). Moreover, it is the approved practice in North Carolina to grant a judgment of nonsuit where the statute of limitations has been properly pleaded and it appears from the face of the complaint and the uncontroverted facts that the plaintiff's claim is barred by the statutory limit of time. Latham v. Latham, 184 N.C. 55, 113 S.E. 623.

The doctrine that the means of knowledge is equivalent to actual knowledge and that a party who has the opportunity for ascertaining the facts cannot remain supine or inactive and thereby assert a want of knowledge, has long been recognized in North Carolina. Stancill v. Norville, 203 N.C. 457, 166 S.E. 319; Peacock v. Barnes, 142 N.C. 215, 55 S.E. 99; In re Johnson's Will, 182 N.C. 522, 109 S.E. 373. As was stated in Hargett v. Lee, 206 N.C. 536, 539, 174 S.E. 498, 500: "A party having notice must exercise ordinary care to ascertain the facts, and if he fail to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired, had he made the necessary effort to learn the truth of the matters affecting his interests."

Applying these principles to the instant case, we think it was incumbent upon Jones to take affirmative steps to assert his rights within a reasonable time after it became clear that the Company did not comply with Baker's promises to redeliver the second policy within seven months after March 26, 1936. Certainly some action should have been taken after Jones received the Company's registered letter of October 10, 1936, rejecting the third application for a $5,000 policy. When the Company thus unequivocally put him on notice that it did not intend to issue him additional insurance, he most definitely should have realized that Baker's promise to redeliver the second policy had not been complied with.

Moreover, even if Baker played upon the credulity of Jones, the latter was unquestionably on notice regarding the existence of a second policy by his admission in his application of August 28, 1936, wherein he stated that there were then outstanding on his life two $5,000 policies. Yet despite all this, Jones remained placidly quiet until April 30, 1940, when he wrote a lengthy letter to the Company, requesting information on the precise amount of insurance outstanding on his life. Accordingly, we hold that his claim, if any he had, has atrophied as a result of his procrastination and is now barred by the statute of limitations. Blankenship v. English, 222 N.C. 91, 21 S.E.2d 891.

It is unfortunate that Baker, the one person who could have shed some light on the entire situation, is now engaged in war work in Virginia and was not available at the trial, although an effort was made to locate him. However, viewing the evidence in the light most favorable to Jones, we feel that the Court below was correct in dismissing Jones' claim.

The judgment of the District Court is affirmed.

Affirmed.