## SIMON v. AMERICAN CASUALTY CO. OF READING, PA.

### No. 5290.

Circuit Court of Appeals, Fourth Circuit.

Nov. 7, 1944.

Marion Meredith, of Fairmont, W. Va., for appellant.

Oscar J. Andre and James M. Guiher, both of Clarksburg, W. Va. (Steptoe & Johnson, of Clarksburg, W. Va., on the brief), for appellee.

NORTHCOTT, Circuit Judge.

This is a declaratory judgment action instituted by the appellee, American Casualty Company of Reading, Pennsylvania, herein referred to as the plaintiff, against John Simon, administrator of the estate of Gerald Martin Simon, deceased, appellant, and others, herein referred to as the defendants. The object of the action was to ascertain whether a certain policy of liability insurance, which had been issued by the plaintiff to one David G. Morris, one of the defendants below, upon a dump truck owned by said Morris, covered Morris' liability in connection with an accident in which the truck was involved. The accident resulted in the death of Gerald M. Simon and the injury to one Motter, both being guest riders in the truck. Two actions for damages against Morris were instituted in the State Court.

In addition to Morris, the insured, there were also made defendants in this action all other persons involved in the accident, including those who instituted actions in the State Court and those who were in position to assert claims in the future.

After a hearing before the judge below, the plaintiff made a motion for a summary judgment and all parties agreed to submit the case to the court for final determination upon the merits. The trial judge held that the policy in question did not cover the assured Morris for the particular accident involved and that the plaintiff was not obligated or required to defend Morris in any action arising out of the accident, or to pay any judgment rendered against him in such action and an order was entered to that effect. From this order an appeal was taken by the defendant, John Simon administrator, only. No appeal was taken by Morris, the assured, or any other of the defendants.

The facts as to which there is no dispute and as found by the trial judge show that the plaintiff had issued an automobile liability indemnity policy to David G. Morris on a dump truck owned and used by him as a common carrier in the transportation of coal, stone and other such commodities for hire, and as a contract carrier of brick for Hammond Fire Brick Company. About October 3, 1942, Morris and one Motter left their homes at Fairmont, West Virginia, to go on a camping and fishing trip to a place near Glenville, West Virginia, a distance of about 85 miles. They traveled in an automobile owned by Morris. The trip was solely for pleasure and in no way connected with the business conducted by Morris. After traveling about 45 miles the automobile became disabled, but the two managed to get a ride to their camping destination. Morris sent a message to one Anderson, his employee, requesting him to

bring the truck in question in the evening of October 6, after Anderson had finished his day's work, to the place where they were camping for the purpose of taking them back home and of towing the disabled automobile back to Fairmont. Pursuant to this request, on the evening specified, after completing his day's work, Anderson drove the truck in question from Fairmont to the place where Morris and Motter were camping, passing the place where the disabled automobile was located. No goods or merchandise were transported in the truck on this occasion. Without the knowledge of Morris, Anderson took two young men, Wilborn Farmer and Gerald Martin Simon, with him as company on the trip. Farmer and Simon made the trip solely for their own pleasure as guests of Anderson. About 9:30 o'clock that same evening Morris, Motter, Anderson, Farmer and Simon left the camp and started back to Fairmont, all of them riding in the truck, with Morris driving. After traveling about three or four miles, and before reaching the place where the disabled automobile was located, the truck skidded off the road while rounding a curve. The truck went over a steep bank, resulting in the death of Simon and injuries to Motter. No other vehicle was in any way involved in the accident.

Chapter 24A of the West Virginia Code Supp.1939, places the supervision and regulation of motor carriers in the Public Service Commission. Paragraph (g), Article 5, Section 5 of that chapter gives the commission power to require motor carriers to file with the commission a surety bond or policy of insurance, or other security—" *. * . *. for the reasonable protection of the traveling, shipping, and general public against injury, loss, damage, or default for which such carrier may be liable, and prescribe rules and regulations governing the filing of evidence of such insurance and such security with the commission. In fixing the amount of such insurance, policy or policies, * * * the commission shall give due consideration to the character and amount of traffic, the value of the property transported, the number of persons affected, and the degree of danger involved in such motor carrier operation."

By virtue of such authority the commission has prescribed certain rules and regulations concerning the issuance of permits to motor carriers. Rule 1 requires the

motor carrier to file with the commission a policy of insurance or surety bond or other security conditioned to pay " * * * any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, ownership, or use of motor vehicles under such certificate or permit, or for loss or damage to property of others; * * *."

In order to meet these requirements and to qualify him as a carrier, Morris applied for and received the policy in question. One of the endorsements on the policy designated as "Exclusion of Passenger Hazard," is as follows: "In consideration of the premium at which this policy is written, it is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability does not apply to bodily injury, including death at any time resulting therefrom, or damage to property sustained by any person while in or upon, entering or alighting from the automobile."

The premium actually charged by the plaintiff for that portion of the policy involved in this case, covering bodily injury liability, was $20.80. Had this exclusion of passenger hazard endorsement not been attached to the policy, the premium covering bodily injury liability which would have been charged by plaintiff would have been $35.25. It is this endorsement which forms the basis of plaintiff's denial of liability.

Defendants contend that another endorsement attached to the policy (M. C. Form 13) provides such coverage. This endorsement is one which the Public Service Commission requires to be attached to all policies of insurance issued upon motor carriers used in the business of motor carriers. The pertinent part of this endorsement is as follows:

"The policy to which this endorsement is attached is an automobile bodily injury liability and property damage liability policy and is hereby amended to assure compliance of the Insured, as a motor carrier of passengers or property, with the pertinent rules and regulations of the Public Service Commission of West Virginia, promulgated in accordance with the provisions of Paragraph (g), Section 5, Article 5 of the Motor Carrier Law."

"In consideration of the premium stated in the policy to which this endorsement

is attached, the company hereby agrees to pay any final judgment recovered against the Insured for bodily injury to or the death of any person * * *, resulting from the negligent operation, maintenance, ownership, or use of motor vehicle under certificate of convenience and necessity or permit issued to the Insured by the Public Service Commission of West Virginia, or otherwise under the Motor Carrier Law, * * *. The liability of the company extends to such losses, damages, injuries, or deaths whether occurring on the route or in the territory authorized to be served as follows: No exceptions."

"Nothing contained in the policy or any other endorsement thereon, nor the violation of any of the provisions of the policy or of any endorsement thereon by the Insured, shall relieve the company from liability hereunder or from the payment of any such final judgment."

"The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement."

Two questions are involved in this appeal: First, did the endorsement (M. C. Form 13) attached to the policy, supersede and annul the endorsement exempting the plaintiff from liability as to any damage suffered by passengers in the truck insured? Second, was the endorsement, excluding passenger hazard, attached to the policy legal and effective?

As to the first question the undisputed facts show that at the time of the accident the truck was not being used for a business which required a motor carrier permit from the Public Service Commission of West Virginia and was not being used to transport either persons or property for hire. It is also clear that under the regulations prescribed by the Public Service Commission the motor carrier form 13 endorsement would only apply to the truck while being used under the certificate of convenience and necessity or permit issued to the insured. It follows that the endorsement M. C. Form 13 does not in any way affect the passenger hazard exemption attached to the policy.

The applicable portions of the acts authorizing the Public Service Commission to make regulations with regard to motor vehicles and contract carriers by motor vehicle, are found in the Code of West Virginia, Chapter 24A Section 5, Article 5, Paragraph (g).

The policy in question was issued by the plaintiff to Morris, the insured, on August 23, 1942, in order to meet the requirements of the Public Service Commission to qualify him as a motor carrier with respect to the dump truck involved.

The purpose of the provision of the Public Service Commission requiring the attachment, to any accident policy issued in the State of West Virginia, of (M. C. Form 13) was to assure the existence of coverage whenever a vehicle was being used in the business for which a permit was required, irrespective of any violations by the insured, which otherwise would cause the coverage to be non-existent. Here the dump truck in question was not being used in the business for which a permit was required but was being used purely for private purposes. No liability insurance is required in West Virginia for vehicles used for private purposes.

In Hawkeye Casualty Co. v. Halferty et al., 131 F.2d 294, 297, certiorari denied 318 U.S. 758, 63 S.Ct. 533, 87 L.Ed. 1131, the Circuit Court of Appeals for the Eighth Circuit decided a similar question in a case in which the facts were practically the same as those in the case here. There the court said:

"We are of the opinion that the appellant's construction of the insurance contract is the only one permissible. It is not denied that the only jurisdiction or power in the Missouri Public Service Commission with reference to the insurance involved here concerns the operation of motor vehicles as common carriers. Parties not engaged in such an operation are not required by the laws of Missouri to carry any insurance. It follows that under Missouri law the parties to the insurance contract were at liberty, so long as not operating as common carriers, to make any contract of insurance they thought proper or to limit the coverage in any contract made as their interests might dictate. Only as to their business as common carriers were the appellees required to take and the appellants to deliver insurance conditioned as required by the Missouri law. Since the jurisdiction

of the Public Service Commission over the character of insurance carried by persons operating automobiles in Missouri extended only to the operations of common carriers, it must be assumed that the Commission did not attempt to exercise any power or authority over motor vehicles not being operated as common carriers. No reason appears why a common carrier operating motor vehicles in Missouri might not, after complying with the laws of Missouri in reference to insurance, applicable to its business, carry such other and further insurance as it deemed wise, or necessary to its protection. The endorsement of the Missouri Public Service Commission applied only to motor vehicles operated in the business of common carriers and was without application in the case of a motor vehicle not so used or operated.

\* \* \* \* \* \*

"Nor are the words stamped on the policy, giving the Missouri Public Service Commission endorsement precedence over all provisions in the policy, effective to change the interpretations of the policy above expressed. These words must be interpreted, as the endorsement itself, in the light of the power and authority of the Public Service Commission. So interpreted, they cannot control other provisions of the policy in their application to operations of the assured in no wise connected with their business as common carriers.

"Since the truck involved in the accident under consideration was not engaged at the time of the accident as a common carrier of freight under the appellees' certificate of public convenience and necessity, the endorsement of the Missouri Public Service Commission, limited to such operations, has no application in this case. The situation in all respects is as if the appellees were not engaged as common carriers, and as if no such endorsement was contained in the policy. In such circumstances the assured was relieved from liability for damages arising out of the injury to persons riding in one of its trucks by the 'Exclusion on Commercial Trucks' endorsement."

Other decisions in which the same result was reached are: Travelers Ins. Co. v. Caldwell, 8 Cir., 133 F.2d 649; Foster v. Commercial Standard Ins. Co., 10 Cir., 121 F.2d 117; Farm Bureau Mut. Automobile Ins. Co. v. Daniel, 4 Cir., 104 F.2d 477.[1]

The appellant relies upon American Fidelity & Casualty Co. v. Bailey, 4 Cir., 76 F.2d 692 and Trinity Universal Ins. Co. v. Cunningham, 8 Cir., 107 F.2d 857, but in both of these cases the vehicle insured was being used for the purpose for which a certificate of convenience and necessity was required.

The appellant also relies on Rusch v. Mielke et al., 234 Wis. 380, 291 N.W. 300, but that decision was rendered under a Wisconsin statute which is different from the West Virginia statute controlling here.

Other cases cited and relied upon by the appellant are distinguishable or are in conflict with the great weight of authorities on this question.

In the able and exhaustive opinion of the court below, found in D.C., 51 F.Supp. 889, the judge enters into a thorough discussion of this point which we do not deem it necessary to further discuss here. We believe the judge's reasoning and conclusions were correct on this point.

On the second point it is contended on behalf of defendant, Simon, administrator, that the endorsement exempting the plaintiff from passenger hazard liability was contrary to the law of West Virginia and that the approval of the Insurance Commission to this endorsement was either a mistake or was secured by fraud and that the endorsement was illegal and consequently of no force.

Chapter 33, Article 6, Section 3 of the Official Code of West Virginia reads as follows:

"Policies Subject to Regulation by Insurance Commissioner.—In addition to conforming to the provisions of the two preceding sections, the forms of all policies issued by such companies shall be subject to regulation and approval by the insurance commissioner, and the insurance commissioner may, if he deems fit, prescribe a general form or forms for all such policies, or specific provisions which shall be inserted in such policies, and all such policies thereafter issued by such companies shall conform to all such regulations prescribed by the insurance commissioner."

[1] A number of State Courts have reached the same conclusion: Schoonover v. Clark et al., 155 Kan. 835, 130 P.2d 619; Smith v. Republic Underwriters of Waco, 152 Kan. 305, 103 P.2d 858; Flythe v. Eastern Carolina Coach Co., 195 N.C. 777, 143 S.E. 865; Basta v. United States Fidelity & Guaranty Co., 107 Conn. 446, 140 A. 816; Caines v. Wheeler, 207 Ky. 237, 268 S.W. 1098.

It will be seen from a reading of this statute that the Auditor of the State of West Virginia, who is constituted the insurance commissioner, has full power to regulate and approve any form of policy or endorsement thereon issued in the State of West Virginia.

In March, 1936, the insurance commissioner issued "National Standard Automobile Policy Official Ruling No. 71-A" in which the following the following pertinent language is used: "The inclusion of any endorsement or language whereby the so called 'guest hazard' is excluded from the automobile bodily injury and property damage policy prescribed by this office under Departmental Ruling No. 71, effective December 1, 1935, is prohibited in the State of West Virginia."

On March 4, 1940, the plaintiff wrote to the Commissioner asking his approval for the rating of all dump body trucks as commercial class 4, " * * * such rating to exclude coverage for passengers * * *." This letter was very brief, specifically pointed out what the plaintiff sought authority to do, and asked the Commissioner for his approval. Such approval was given on March 7, 1940, when the Commissioner stamped upon the letter the following words:

"Filed for use in the State of W. Va. on and after this ...... day of ..........., 19.... (Signed) Edgar B. Sims, March 7 —1940, State Auditor Insurance Commissioner."

Subsequently, in October, 1941, the Commissioner issued a ruling, known as Departmental Ruling No. 4, establishing minimum policy requirements and requiring all casualty insurance companies to submit to him for approval on or before December 31, 1941, copies of forms of all policies and endorsements which were expected to be used by such companies in West Virginia, on and after January 1, 1942. In compliance with this requirement, the plaintiff on December 30, 1941, wrote a letter to the Commissioner enclosing its form of policy and copies of the endorsements it expected to use, together with a numerical list of all of the forms submitted, showing the number and name of each endorsement. Among the forms submitted, was the endorsement in question. In the list of endorsements, wherein each was referred to by number and title, this particular endorsement was listed as "P 152—Exclusion of Passenger Hazard."

The form of policy and all of the endorsements were approved by the Commissioner, except two, one of which was disapproved, and the other returned for further procedure. The endorsement disapproved was No. P 201, entitled "Local Truck Hauling for one Concern" and the one which was returned for further procedure was No. P 266 entitled "Amendment of Garage Liability Policy." The approval of the policy and of the endorsements, except the two already mentioned, was indicated by stamping upon each of them the following notation: "Filed for use in the State of West Virginia on and after this 2 day of January 1942, (Signed) Edgar B. Sims State Auditor Insurance Commissioner."

The judge below found as a fact from the evidence that the endorsement was duly approved by the Insurance Commissioner of West Virginia and that all allegations of fraud or mistake were not supported.

On this point the Judge below said:

" 'Department Supplemental to Ruling No. 4' required insurance companies submitting policy forms and endorsements for approval to certify that they comply with the minmum requirements described in Departmental Ruling No. 4, and in submitting its policy and endorsements plaintiff made such certification. If such policy and endorsement did not meet every necessary requirement, it was the duty of the Commissioner to disapprove the same and notify the insurance company, so that it would not use the endorsement in West Virginia in the future. Instead, the Insurance Commissioner indicated his approval by stamping upon the endorsement appropriate words to show that the endorsement was filed for future use in West Virginia on and after January 2, 1942. The policy in question was issued on August 23, 1942. Plaintiff was entitled to and did rely upon these words and the subsequent action of Commissioner as indicating his permission to make use of the endorsement in West Virginia after January 2, 1942. The Commissioner states in his affidavit that the expression 'Filed for use in West Virginia' is commonly relied upon by insurance companies as indicating permission to make use, in West Virginia, of the form so stamped.

"Harlan Justice, a deputy insurance commissioner who is responsible for the approval and disapproval of all insurance policies and endorsements, under direction of the insurance commissioner, stated that

the use of the 'Exclusion of Passenger Hazard' endorsement in any automobile liability policy written in West Virginia is against the rules promulgated by the Insurance Commissioner of West Virginia. With reference to the specific authority given the plaintiff to use such endorsement, he says that plaintiff's letter dated March 4, 1940, asking approval for the rating of all dump body trucks as commercial class 4, 'such rating to exclude coverage for passengers * * *' was received but was stamped filed for use in West Virginia 'through inadvertence and mistake'. The letter was brief and specifically points out that the rating excludes coverage for passengers. It is difficult to understand how it could be misunderstood. He states that it was also through inadvertence and mistake that the endorsement in question was likewise stamped filed for use in West Virginia when submitted for approval on December 30, 1941, almost two years later; and that such stamping was done in reliance upon the letter of the insurance company submitting such endorsements for approval, wherein it stated that such endorsements complied with Departmental Ruling No. 4. Again it is difficult to understand how there could be any mistake about the effect of an endorsement, the title of which was 'Exclusion of Passenger Hazard'. There was no evidence of fraud or intentional misrepresentation on the part of the insurance company."

In his conclusion of law, the judge below said on this point: "It was the duty of the Insurance Commissioner of West Virginia to either approve or disapprove of insurance policies and endorsements submitted to him by plaintiff. If the endorsements submitted by plaintiff did not meet every necessary requirement of such Commissioner, it was the duty of the commissioner to disapprove the same and notify the plaintiff so that it would not use the endorsement in West Virginia in the future. Instead, the Insurance Commissioner indicated his approval by stamping upon the endorsement appropriate words to show that the endorsement was approved and filed for future use in West Virginia on and after January 2, 1942. Under such circumstances plaintiff was permitted and justified in using such endorsement upon the policy contract in question, and the use of such endorsement was not illegal."

■ We are of the opinion that the judge below was right in holding that the use of the "Exclusion of Passenger Hazard" endorsements on the policy in question, made a legal contract between the insured and the insurer which should be enforced and reached the right conclusion as to the second point.

■ We do not mean to say that the approval by the Commissioner of a provision in a policy which violated a clear regulation of his office would render such provision valid. Regulations have the effect of statutory law and may not be waived or set aside by state officers as though they were contracts between private parties. We think, however, that the approval given March 7, 1940, of the exclusion of passenger coverage for dump body trucks should be considered either as an amendment of the regulation of March 1936 or an administrative interpretation thereof to the effect that its language should not be held to cover dump body trucks, and that the approval of the endorsement submitted in December 1941 was another administrative interpretation of the regulation to which great weight should be given in interpreting it.

The contract of insurance was sold at a lower rate than would otherwise have been charged because of the exclusion of passenger hazard endorsement, and the plaintiff is entitled to have the contract enforced as it was made.

The judgment of the court below was correct and will be accordingly affirmed.

Affirmed.