**SMITH, Plaintiff, v. MASSACHUSETTS BONDING AND INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE COMPANY, Defendants.**

Common Pleas Court, Franklin County.

No. 194758. Decided January 29, 1957.

Edward J. Utz, Cincinnati, for plaintiff.

Ballard, Dresbach, Crabbe & Newlon, Charles E. Brown, Wilbur W. Jones, for defendant Nationwide Mutual Insurance Co.

Clifford L. Rose, for defendant, Massachusetts Bonding and Insurance Company.

## OPINION

By BARTLETT, J.

This is an action for a declaratory judgment, wherein the plaintiff

seeks a declaration of his right of insurance coverage, under the policies issued by each or both of the defendant insurance companies, for the payment of a judgment of $2500.00 rendered against the plaintiff, as the result of a motor vehicle collision in which plaintiff's tractor was involved.

The case was submitted to the Court by agreement of counsel, upon the petition of the plaintiff, the answers of the defendant insurance companies, the briefs of counsel for the respective parties, and four exhibits, being a stipulation of facts, the lease agreement under which the plaintiff was hauling a load of steel for the Hancock Freight Lines, Inc., and the insurance policies in question issued by each of the defendant insurance companies.

On February 4, 1953, the plaintiff by written agreement, leased one of his tractors and furnished the driver to haul a load of steel for the Hancock Lines, Inc. in its trailer from Evansville, Indiana to Pittsburgh, Pennsylvania.

On February 6, 1953, while enroute with the trailer load of steel, plaintiff's tractor developed mechanical difficulty, the two-speed axle of the tractor not operating properly.

At Hebron, Ohio, the driver called the plaintiff, who instructed him to bring the tractor to Cincinnati, Ohio, for repairs if it was in a driveable condition. The driver unhitched the trailer from the tractor, left the trailer at the Buckeye Service Center at Hebron, Ohio, and left with the tractor for Cincinnati. The following day the plaintiff himself, with a new tractor, completed the trip with the load of steel on the trailer from Hebron, Ohio, to Pittsburgh, Pennsylvania.

Enroute from Hebron to Cincinnati, the driver was involved in a motor vehicle collision in Columbus, Ohio, while operating the tractor of the plaintiff Smith; and as a result of said collision, Willard Haywood filed an action in this court, being case No. 189,464, against William Martin, Jr., the driver, Clarence Smith, the owner of the tractor, and Hancock Freight Lines, Inc. The answer of Clarence Smith was filed in that case on April 10, 1954, by counsel who, in the instant case, represent Nationwide Mutual Insurance Company, and at the pre-trial conference on October 6, 1955, the same counsel appeared for Smith in the Haywood case before Harter, J. as noted "Farm Bur. Ins. on dead head coverage." On February 9, 1956, Hancock Lines, Inc. was dismissed without prejudice as a party defendant on motion of Haywood, the plaintiff, the entry of dismissal being approved only by counsel for the plaintiff Haywood and counsel for Hancock Freight Lines, Inc.

On February 9, 1956, the Haywood case came on for trial in this court, William Martin, Jr., not having been served with summons and Hancock Freight Lines having been dismissed as a defendant. The trial proceeded against Clarence Smith, and upon an agreed statement of facts, the Court directed the jury to return a verdict of $2500.00 against Smith, which was accordingly done; and on April 20, 1956, judgment for $2500.00 was entered against Smith on said verdict.

At the Haywood trial present counsel for Smith appeared in his behalf with co-counsel, now representing Nationwide Mutual Insurance Company in the instant case.

On February 6, 1953, the tractor owned by plaintiff Smith, the operation of which resulted in the Haywood judgment, was insured with a policy of general liability and property damage insurance with the defendant, Nationwide Mutual Insurance Company, said policy containing, among other provisions, the following endorsement:

"It is agreed that such insurance as is afforded by the policy for bodily injury liability, for property damage liability and for medical payments with respect to the automobile classified as 'commercial (nontrucking)' applies subject to the following provisions:

"1. The insurance for bodily injury liability and for property damage liability does not cover as an Insured any person or organization, or any agent, employee or contractor thereof, other than the Named Insured, who is required to carry automobile liability insurance under any motor carrier law because of transporting property for the Named Insured or for others.

"2. The insurance does not apply:

"(a) while the automobile or any trailer attached thereto is used to carry property in any business;

"(b) While the automobile is being used in the business of any person or organization to whom the automobile is rented."

The carrier, Hancock Freight Lines, Inc., had in effect a general policy of liability insurance with the defendant, Massachusetts Bonding and Insurance Company, said policy containing, among other provisions, the following endorsement, in part as follows:

"Whenever the word 'insured' appears in this endorsement, it shall be held to mean the motor transportation company, or private motor carrier named in the policy, its agents and employees, and also held to mean any independent contractor of said motor transportation company or private motor carrier, engaged in transporting persons or property, or providing or furnishing such transportation service, and also held to mean each employer of a private motor carrier authorized in its permit or registration against loss sustained by reason of the death of or injury to persons and the loss of or damages to property resulting from the negligence of such private motor carrier, its agents and employees.

"No condition, provision, stipulation, or limitation contained in the policy or any endorsement thereon, nor the violation of any of the same by the insured shall affect in any way the right of any person injured in person or property, within the State of Ohio, by the negligence of the insured, while operating as aforesaid, or relieve the Insurance Company from the liability provided for in this endorsement or from the payment to such person of any judgment within the limits set forth in the policy, but the conditions, provisions, stipulations, or limitations contained in the policy or in any other endorsement thereon shall remain in full force and be binding as between the insured and the Insurance Company."

The policy of the Massachusetts Bonding and Insurance Company had been filed with the Public Utilities Commission of Ohio and the Interstate Commerce Commission of the United States, in accordance with the respective rules and regulations of said commissions; and

regular interstate certificates were issued to Hancock Freight Lines, Inc., by each of said commissions.

The plaintiff Smith on February 6, 1953, did not have a permit from either of said commissions. It is agreed by counsel in the Stipulation of Facts, that a tractor operating on the highways of Ohio without having a trailer containing cargo attached does not require any certificate or permit from either of said commissions.

After the Haywood judgment for $2500.00 was rendered against him, the plaintiff Smith made a proper demand upon each of the defendant insurance companies to pay said judgment, each of which refused to do so; and thereupon, the plaintiff filed the instant case, asking for a declaration of his right of insurance coverage for the payment of the Haywood judgment, under each or both of the policies of said defendant companies, and for the allowance of attorney fees for services rendered in the Haywood case and the prosecution of the instant case for such declaratory judgment.

The decisive question then arises: was Martin, the driver of Smith's tractor, engaged in the carrying out of the transportation project, undertaken for the carrier, Hancock Trucking Lines, Inc., at the time of the collision with Haywood's automobile in Columbus, or was Martin on a mission for the sole benefit of Smith, in returning his tractor to Cincinnati for repairs, in compliance with the actual direction of Smith himself.

"1. Where a common carrier of freight by motor vehicle possesses Public Utilities Commission and Interstate Commerce Commission permits, leases in its operations, from an independent contractor, a vehicle, including the services of a driver, and such vehicle is operated under the carrier's permits, such driver is deemed to be under the direction and control of the carrier, and, under the doctrine of respondeat superior, the latter is fully responsible for the actions and conduct of the driver within the scope of the carrier's business.

"2. Where a servant, going on a mission of his own, makes a clear and complete deviation and departure from the scope of his master's business, under the doctrine of respondeat superior, the master is not responsible for any acts of the servant occurring during the period of such deviation.

"3. Where a common carrier of freight by motor vehicle is the possessor of Public Utilities Commission and Interstate Commerce Commission permits, leases from another a tractor with a driver, combines the tractor with its own trailer, attaches its permit plates to the unit, sends the unit from its place of business to a city in another state with a load of freight, and instructs the driver to return to the carrier's place of business, after unloading the freight at its destination, either with return freight for the carrier, if any, or with the unit empty, and where the driver after unloading the freight takes the tractor-trailer unit, represents it as his own and contracts with another party to haul freight for him to a point not covered by the permits, and where such action of the driver is for his own benefit and profit, without the knowledge, consent or participation of the original carrier, and, while on his

way to deliver the freight he is hauling for his own benefit, the driver negligently causes an accident, the original carrier is not liable for his conduct, even though the accident occurs on a road upon which the driver would be traveling had he not departed from the original carrier's instructions." **Thornberry v. Oyler, 164 Oh St 395.**

"A common carrier of freight by motor vehicle, who possesses a certificate issued under Part II of the Interstate Commerce Act and employs an independent contractor, who does not possess such a certificate, to transport interstate freight in such independent contractor's truck carrying the permit plates of the common carrier, is not liable for an accident caused by the negligence of the independent contractor driving his own truck where, at the time of such accident, the independent contractor had entirely completed the transportation for the common carrier, had no further obligation or duty toward such common carrier and was driving the empty vehicle entirely under his own direction and control at a point distant from the location where he had completely unloaded the freight which he had been hired to transport." **Simon, a Minor, Appellee, v. McCullough Transfer Co., Inc., Appellant, 155 Oh St 104.**

"3. The purpose of Administrative Rule No. 4 of the Bureau of Motor Carriers of the Interstate Commerce Commission, as authorized by Part II of the Interstate Commerce Act, Title 49, Section 301 et seq., U. S. Code, to regulate interstate common carriers, is to make a carrier responsible to the public for wrongs done or injury inflicted by the carrier or those acting for it throughout the entire course of any transportation project undertaken by the carrier, and under such rule the employing carrier, as well as his independent contractor performing transportation for such carrier, may be held liable to third persons for injuries resulting from the negligent conduct of the independent contractor in such transportation." **Behner v. Indus. Commission of Ohio, 154 Oh St 433.**

The Thornberry case, supra, establishes the principle that where the servant on a mission of his own, makes a clear and complete deviation and departure from the scope of his master's business, under the doctrine of **respondeat superior**, the master is not responsible for any acts of the servant occurring during the period of such deviation.

When the plaintiff instructed the driver of his tractor to bring it back to Cincinnati for repairs, if in a driveable condition, and the driver unhitched the trailer from the tractor, left the trailer at Hebron and departed for Cincinnati, can it be said that the plaintiff's tractor and its driver, while backtracking through Columbus, were in the business of the plaintiff's master, the hauling of a load of steel to Pittsburgh, upon behalf of Hancock Freight Lines, Inc.? Certainly not. It reminds one of the trip of "wrong-way Corrigan." The plaintiff's tractor was going in the wrong direction to carry out his contractual obligation with his master, Hancock Freight Lines, Inc. It must be remembered that plaintiff's contract with Hancock was limited to this one load of steel and its haulage one way only. On the return trip the tractor of the plaintiff and its driver would be dead-heading on a mission solely

of the plaintiff's. When the driver started to Cincinnati for repairs, there was no indication in the Stipulation of Facts that such tractor or driver were expected to return to Hebron and resume the mission of transporting the load of steel to Pittsburgh. Instead, the Stipulation of Facts discloses that the plaintiff substituted another of his tractors and he, himself, drove the new tractor to Hebron, hooked on to the trailer and hauled the steel to its destination.

While it is true, as stated in the Thornberry case, supra, that where a common carrier, such as Hancock Freight Lines, Inc., leases from an independent contractor, such as the plaintiff Smith in the instant case, his tractor and driver, and such tractor is operated under the carrier's permits from the Public Utilities Commission and Interstate Commerce Commission, such driver of the tractor is deemed to be under the direction and control of the carrier; but in the instant case, the carrier, Hancock Freight Lines, Inc., had no opportunity to exercise direction and control of plaintiff's tractor and its driver, when such tractor developed mechanical difficulty that made it impossible to proceed on the mission of hauling the trailer load of steel to its destination. The plaintiff, without the knowledge, consent or participation of his carrier, assumed actual direction and control of his tractor and its driver; and the driver obeyed the instructions of the plaintiff, his actual master, unhitched the carrier's trailer from plaintiff's tractor, and started in the opposite direction from his original destination with the load of steel, on his way to Cincinnati, to have plaintiff's tractor repaired. The stipulation of facts does not show any intention of Martin, the driver of plaintiff's tractor, to resume the mission of hauling the load of steel to Pittsburgh; and in fact, the plaintiff himself drove another tractor to Hebron, hitched the carrier's trailer with its load of steel to the new tractor, and finished the delivery of the steel to Pittsburgh. By the time plaintiff's tractor was repaired in Cincinnati, it is reasonable to assume that the plaintiff had completed the delivery of the steel to its destination. The repaired tractor was ready to be used on some other mission of the plaintiff in the transportation of property with another carrier.

There is no showing that the P. U. C. O. or the I. C. C. permits belonging to Hancock Freight Lines, Inc., were attached to the plaintiff's tractor at the time of the collision with the automobile of Haywood in Columbus, which resulted in the judgment in question in favor of Haywood against the plaintiff. As stated in the Simon case, supra, the plaintiff and the driver of his tractor, "did not need them (the permits) at the time of the accident." At that time, Martin, the driver of the plaintiff's tractor, was not carrying out the mission of hauling a trailer load of steel to Pittsburgh for Hancock Freight Lines, Inc., in fulfillment of its contract with the plaintiff. Certainly, if these permits of the carrier were attached to the plaintiff's tractor at the time of the accident, it would have been so stipulated or shown in evidence in the instant case, but no such proof is before the Court. It is more reasonable to assume that these permits of Hancock Freight Lines, Inc., were left with its trailer at Hebron; or otherwise, the plaintiff would be violating the law of both the state and federal governments when he hitched

his other tractor to the carrier's trailer and transported the load of steel to Pittsburgh. There is a legal presumption that the plaintiff had such permits attached to his tractor that finished the mission of hauling the steel to its destination, since the law required such permits be so attached on that mission.

On p. 111 of the Simon case, supra, Stewart, J., speaking for the Supreme Court of Ohio, says:

"Thus it follows that if Bolton (owner and driver of the truck) negligently injured plaintiff while the former was transporting coal in interstate commerce for defendant (Transfer Co., the common carrier of freight) and using defendant's Public Utilities Commission and Interstate Commerce Commission permits, having none of his own, defendant would be liable for Bolton's negligence, even though Bolton was an independent contractor. But, as said in the **Behner case**, such liability exists only throughout the course of any transportation project undertaken by the carrier."

Can it be said that plaintiff's tractor and its driver were on a transportation project for Hancock Freight Lines, Inc., when such tractor and driver at the time of the accident, were going in the opposite direction from the destination of the trailer load of steel, at the actual direction of the plaintiff who had withdrawn this tractor and driver from the mission of transporting the steel to Pittsburgh, and had actually substituted another tractor and driver, that completed the transportation of the steel to its destination.

Much stress has been laid on the cases of **Wood v. Vona et al, 147 Oh St 91** and **Leonard v. Murdock et al, 147 Oh St 103**, in which the Supreme Court held in the Wood case, "in the movement of a vehicle coming from a repair shop, such movement is in the transportation service within the meaning of the policy (of the carrier), although such vehicle was not then being operated for the transportation of freight," and in the Leonard case the same court held:

"in the movement of a vehicle going to a place for repairs, such movement is in the transportation service within the meaning of the policy (of the carrier), although such vehicle was not then being operated for the transportation of freight."

In the Wood case, supra, Bell, J., speaking for the majority of the court on p. 99, says:

"There is evidence in the record, which, if believed, would justify the conclusion that Vona (the owner and driver of the tractor) was acting under direct instructions of Glenn Cartage (the carrier) at the time of the collision. That narrows our question to what is meant by the following phrase, found in the Public Utilities Commission endorsement attached to and made part of the policy: '* * * **while operating any vehicle or vehicles of any kind, character or description in the motor transportation company service or private motor carrier service.**'" (Emphasis supplied by Bell, J.).

On p. 101, Bell, J. continues:

"Applying the legal principle announced in the Mitchell case to the situation here presented, to-wit, that the colision and damage occurred while the tractor, after being repaired, was being driven to a place to

get the trailer and thence to the plant of Glenn Cartage to resume hauling for it, * * *."

In the Leonard case, supra, Bell, J. speaking for the majority of the Court on p. 108, says:

"For the reasons stated in the **Wood** case the contention of Ocean (Liability Insurance Co. insurer of carrier, Glenn Cartage) that the operation of the tractor at the time and place of the collision, as a matter of law, was not within the coverage of the policy, cannot be sustained."

In the Leonard case, Murdock, an owner-operator of his own truck and trailer, entered into a verbal agreement with Glenn Cartage Co. for the haulage of freight under its Public Utilities Commission permit. The name of Glenn Cartage and the number of said permits were painted upon the Murdock truck. Murdock had hauled for Glenn Cartage for over a year under this general employment arrangement so that after the repairs to his truck, he would resume such hauling for Glenn Cartage. While in the instant case the plaintiff Smith had a contract to haul one load of steel to Pittsburgh only, and thereupon his relationship with the carrier, Hancock Freight Lines, Inc., ceased; and since the plaintiff Smith had completed the transportation of the load of steel with another tractor, there was no possibility of resuming hauling unless and until another contract was secured by plaintifff Smith from Hancock Freight Lines, Inc.

The agreed judgment of $2500.00 entered against Smith, in favor of Haywood, was necessarily based upon the doctrine of **respondeat superior** which placed the driver Martin under the direction and control of Smith and within the scope of Smith's business, as the master of such driver. Counsel for Nationwide Mutual Insurance Company in the instant case, under its policy of insurance with the plaintiff Smith, acted as his counsel in the Haywood case.

Administrative Order No. 1447, the Public Utilities Commission of Ohio, Rule 6—Insurance, provides in part:

"No authorized carrier shall lease equipment unless or until the owner thereof shall have obtained and filed with the Public Utilities Commission of Ohio, a liability insurance policy or insurance certificate protecting the public against loss sustained by reason of the death or bodily injuries to persons and their loss of or damage to property resulting from the negligence of such owner or his employee, in amounts equivalent to the minimum amounts prescribed in the Commission's Administrative Order No. 138, any supplements thereto, or any superseding orders thereof, while that equipment is not in the service of any authorized carrier and not covered by any authorized carrier's insurance. * * *"

Without question the foregoing order of the Public Utilities Commission required the plaintiff Smith to obtain and file with the Commission just such a type of liability insurance policy, as he had with the defendant, Nationwide Mutual Insurance Company, and such a policy was intended to cover situations such as the accident in Columbus.

The Court finds and declares that at the time of the accident in

Columbus, the plaintiff Smith's tractor and its driver, Martin, were not engaged in the business of Hancock Freight Lines, Inc., and consequently said carrier was not responsible for the acts and conduct of said driver at the time in question; but at that time, said driver was on a mission for Smith in obedience to the actual directions of Smith himself, and, therefore, Smith was responsible for the acts and conduct of Martin, the driver of Smith's tractor.

The Court, therefore, declares that the judgment of $2500.00 obtained by Haywood against Smith does not fall within the terms of the liability insurance policy carried by Hancock Freight Lines, Inc., with Massachusetts Bonding and Insurance Company, but said judgment does fall within the coverage afforded by such a policy held by Smith with Nationwide Mutual Insurance Company, since the tractor of Smith at the time was not being used to carry property in any business, and was not being used in the business of any person to whom it was rented.

Counsel for the defendant, Nationwide Mutual Insurance Company, having agreed that plaintiff was entitled to reasonable attorney's fees for services rendered in the Haywood case and the instant case seeking a declaratory judgment, the Court allows such a fee, and if counsel is not able to agree on the amount of said fee, the Court will hear evidence to determine the amount thereof.