108 S.E.2d 36 (1959)
250 N.C. 7
TEXTILE INSURANCE COMPANY
v.
Callie R. LAMBETH and Carlee W. Melton, Executrices of the Estate of Casper A. Warner, d/b/a Warner's Transfer and Storage Company, Ruth M. Warner, Administratrix of the Estate of Winfred Alan Warner, Deceased, Jesse Misenheimer, Administrator of the Estate of Gary Wayne Misenheimer, Deceased, L. G. DeWitt, Inc., Nancy Irene Jett, Administratrix of the Estate of Thomas Clifton Jett, Deceased.
No. 600.
Supreme Court of North Carolina.
April 8, 1959.
*39 Sapp & Sapp, Greensboro, for plaintiff, appellant.
Jordan, Wright & Henson, Greensboro, and Martin & Whitley, High Point, for Callie R. Lambeth and Carlee W. Melton, Executrices of the Estate of Casper A. Warner, d/b/a Warner's Transfer and Storage Co., Ruth M. Warner, Administratrix of the Estate of Winfred Alan Warner, Deceased, defendants, appellees.
Morgan, Byerly & Post, High Point, for Jesse Misenheimer, Administrator of the Estate of Gary Wayne Misenheimer, Deceased, defendant, appellee.
Pittman, Webb & Lee, Rockingham, for L. G. DeWitt, Inc., Nancy Irene Jett, Administratrix of the Estate of Thomas Clifton Jett, Deceased, defendants, appellees.
BOBBITT, Justice.
Upon waiver of jury trial as provided in G.S. § 1-184, the court's findings of fact have the force and effect of a verdict by jury. Cauble v. Bell, N.C., 107 S.E.2d 557, and cases cited.
Was the evidence sufficient to support the court's findings of fact? If so, are the findings of fact sufficient to support the court's conclusions of law and judgment?

Re: Policy No. AP 62156.
An endorsement attached to this policy provides: "In consideration of the premiums charged it is understood and agreed that the vans and trucks covered hereunder are used exclusively within a radius of fifty (50) miles of the limits of the City or Town where such vans or trucks are principally garaged."
The court found as a fact that the collision occurred 57.08 miles from the city limits of High Point, North Carolina, where, according to the policy, the collision truck was to be "principally garaged."
This policy afforded no protection to Warner in respect of the collision truck when operated more than fifty miles from the city limits of High Point, North Carolina. Wright v. Mercury Insurance Co., 244 N.C. 361, 368, 93 S.E.2d 438, and cases cited. Indeed, the Warner defendants make no contention that this policy protects *40 them in respect of claims arising out of the April 10, 1957, collision.
Whether plaintiff is entitled to a judgment of nonliability under this policy as to defendants Misenheimer, Jett and DeWitt depends upon the legal significance of another endorsement whereby plaintiff certified that it had issued to Warner "the policy of Automobile Bodily Injury Liability and Property Damage Liability Insurance herein described which, by the attachment of endorsement, form No. N.C. M.C. 20, revised, approved by the North Carolina Utilities Commission, has been amended to provide the coverage or security for the protection of the public required with respect to the operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity, permit, or other lawful authority, issued to the Insured by the North Carolina Utilities Commission under the North Carolina Bus Act of 1949, G.S. § 62-121.43 et seq., with respect to motor carriers of passengers or under the North Carolina Truck Act of 1947, G.S. § 62-121.5 et seq., with respect to motor carriers of property, and the pertinent rules and regulations of the North Carolina Utilities Commission, regardless of whether such motor vehicles are specifically described in the policy or not. The liability of the Company extends to all losses, damages, injuries, or deaths whether occurring on the route or in the territory authorized to be served by the Insured or elsewhere within the borders of the State of North Carolina." (Our italics.) A certificate of insurance, setting forth said endorsement, was filed by plaintiff with the North Carolina Utilities Commission.
Section 19 of the North Carolina Truck Act of 1947, now codified as G.S. § 62-121.23, provides: "No certificate or permit shall be issued to any motor carrier, or remain in force until such carrier shall have procured and filed with the Commission such security for the protection of the public as the Commission shall by regulation determine and require."
As to this policy, the court, based on the italicized sentence, concluded as a matter of law that plaintiff was not entitled to a judgment of nonliability as to defendants Misenheimer, Jett and DeWitt. The judgment proper contains no provision relating to this policy except the (first) sentence wherein it was adjudged "that the plaintiff is not entitled to the relief prayed for in the complaint." Thus, the court refused to adjudge plaintiff's nonliability under this policy; and the judgment implies that both policies afford protection to defendants Misenheimer, Jett and DeWitt.
In Flythe v. Eastern Carolina Coach Co., 195 N.C. 777, 783, 143 S.E. 865, where no such endorsement was involved, this Court held that the insurer was not liable for claims arising out of a collision that occurred when the insured bus was being operated on a special trip (from Raleigh to Davidson College) when the policy provided that the bus was to be used in carrying passengers between Wilmington and Charlotte, on a fixed schedule, over North Carolina highways.
Here, the North Carolina Utilities Commission had issued to Warner a certificate of public convenience and necessity whereby Warner was authorized as an irregular route common carrier to transport household goods "between all points and places throughout the State of North Carolina." Unquestionably, if the collision had occurred when the collision truck was engaged in the intrastate transportation of household goods as authorized by Warner's certificate of public convenience and necessity, Policy No. AP 62156, endorsed as aforesaid, would have afforded protection to defendants Misenheimer, Jett and DeWitt irrespective of the rights and liabilities of plaintiff and Warner inter se.
However, the court found as a fact that, when the collision occurred, the collision truck was engaged in the transportation of household goods from High Point, North Carolina, to Miami, Florida, an interstate operation. Warner's authority to operate *41 the collision truck for the transportation of household goods in interstate commerce was conferred solely by its I.C.C. franchise, not by the certificate of public convenience and necessity issued to Warner by the North Carolina Utilities Commission. The North Carolina Utilities Commission did not purport to authorize, nor did it have legal power to authorize, interstate truck operations. As to such operations, the Interstate Commerce Commission had full and exclusive authority.
In Putts v. Commercial Standard Insurance Co., Tenth Circuit, 173 F.2d 153, the coverage of the policy was limited to operations within fifty miles of Deming, New Mexico. The collision occurred more than fifty miles from Deming while the truck was en route to Dallas, Texas. The insured held permits from the Corporation Commission to operate as a contract motor carrier of goods for hire. Endorsements extending coverage to protect the public while operating under such permits were required and issued. However, when the collision occurred the truck was engaged in transporting the insured's own merchandise for use in the insured's own business. Since the truck was not being operated under either permit at the time of the accident, if was held that insured's liability to third parties was not within the coverage of the policy.
It is generally held that a policy endorsement, issued to comply with the requirement of a state agency such as the North Carolina Utilities Commission, will provide coverage to the public only in respect of operations authorized by the insured's permit or certificate of public convenience and necessity. Foster v. Commercial Standard Ins. Co., Tenth Circuit, 121 F.2d 117; Simon v. American Casualty Co. of Reading, Pa., Fourth Circuit, 146 F.2d 208; Sordelett v. Mercer, 185 Va. 823, 40 S.E.2d 289; Hawkeye Casualty Co. v. Halferty, Eighth Circuit, 131 F.2d 294; Travelers Ins. Co. v. Caldwell, Eighth Circuit, 133 F. 2d 649; Frohoff v. Casualty Reciprocal Exchange, Mo.App., 113 S.W.2d 1026; Drake v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 265 Ala. 444, 92 So.2d 11; Smith v. Massachusetts Bonding and Insurance Co., Ohio Com.Pl., 142 N.E.2d 307. Compare Kietlinski v. Interstate Transportation Lines, 3 Wis.2d 451, 88 N. W.2d 739.
The underlying idea is expressed by Circuit Judge Northcott in Simon v. American Casualty Co. of Reading, Pa., supra [146 F.2d 211], as follows: "The purpose of the provision of the Public Service Commission requiring the attachment, to any accident policy issued in the State of West Virginia, of (M. C. Form 13) was to assure the existence of coverage whenever a vehicle was being used in the business for which a permit was required, irrespective of any violations by the insured, which otherwise would cause the coverage to be non-existent." (Our italics.)
In our opinion, the endorsement issued by plaintiff to comply with the requirements made by the North Carolina Utilities Commission in respect of operations under its certificate of convenience and necessity does not extend the policy coverage so as to provide protection to third persons in respect of operations which the North Carolina Utilities Commission neither authorized nor was empowered to authorize.
For the reasons stated, we reach the conclusion that, with reference to Policy No. AP 62156, plaintiff was entitled to a judgment of nonliability as to all defendants. Plaintiff's assignment of error, based on the court's failure to so adjudge, is sustained. Accordingly, the judgment should be modified so as to contain an express adjudication to this effect. It is so ordered.

Re: Policy No. AP 61135.
The Interstate Commerce Commission had authorized Warner to operate as a common carrier by motor vehicle, over irregular routes, in the transportation of "Household Goods as defined in Practices of Motor Common Carriers of Household *42 Goods. 17 M.C.C. 467, Between High Point, N. C., and points and places within 10 miles thereof, on the one hand, and, on the other, points and places in Georgia, Florida, Tennessee, West Virginia, Ohio, New Jersey, New York, Pennsylvania, Maryland, and District of Columbia, traversing South Carolina, Virginia, Kentucky, and Delaware for operating convenience only."
Plaintiff's assignment of error, based on its exception to the court's finding that the collision truck was transporting Mr. Sirrul's household goods from High Point to Miami, is overruled. The sole basis therefor is that one witness testified that some (unidentified) automobile accessories were included in the load. According to this witness, Mr. Sirrul was a salesman for an "accessory company." We think the evidence fully supports the court's finding.
Attached to Policy No. AP 61135 is an endorsement whereby plaintiff certified that it had issued to Warner "a policy or policies of Automobile Bodily Injury Liability and Property Damage Liability Insurance which, by the attachment of endorsement, form number B.M.C. 90, approved by the Interstate Commerce Commission, has or have been amended to provide the coverage or security for the protection of the public required with respect to the operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity or permit issued to the Insured by the Interstate Commerce Commission or otherwise in transportation subject to part II of the Interstate Commerce Act [49 U.S. C.A. § 301 et seq.] and the pertinent rules and regulations of the Interstate Commerce Commission, regardless of whether such motor vehicles are specifically described in the policy or policies or not. The liability of the Company extends to all losses, damages, injuries, or deaths whether occurring on the route or in the territory authorized to be served by the Insured or elsewhere." (Our italics.) A certificate of insurance, setting forth said endorsement, was filed by plaintiff with the Interstate Commerce Commission.
An I. C. C. franchise confers operating rights. What motor vehicles are used in exercising his franchise rights is solely a matter for the licensee. The obvious purpose of the endorsement is to provide protection of the public when the licensee is exercising his I. C. C. franchise rights irrespective of the particular vehicle the licensee may be using while so engaged.
Under the italicized provision of said endorsement, it is quite clear that this policy afforded protection to defendants Misenheimer, Jett and DeWitt irrespective of the rights and liabilities of plaintiff and Warner inter se.
The judgment reforms Policy No. AP 61135 by amending Item 5 to read "1950 Chevrolet, two-ton truck, motor number HEA 753118, serial number 14TWG4179, or the 1950 Chevrolet, two-ton truck, motor number 9TYI-1080, serial number 1016679, when used as a substitute for the described vehicle when the described vehicle is temporarily withdrawn from use in long-haul or interstate commerce operations, only one vehicle to be beyond a radius of 50 miles from the limits of the City of High Point, North Carolina, at any given time."
Based on evidence it considered clear, strong, cogent and convincing, the court found that the agreement of the parties with reference to coverage on the collision truck was as stated in said amendment but that a provision to that effect had been omitted from the policy by mutual mistake.
It is well settled: (1) To reform, i. e., to correct, a written instrument on the ground of mutual mistake of the parties, the evidence must be clear, strong and convincing. Johnson v. Johnson, 172 N.C. 530, 90 S.E. 516. (2) "Whether or not the evidence is clear, strong and convincing in a particular case is for the jury to determine." Stansbury, North Carolina Evidence, § 213, and cases cited.
*43 In addition to facts stated above, the court's extensive findings of fact include many evidential findings as distinguished from ultimate findings. We limit our review to those factual findings which we regard sufficient to support the right of the Warner defendants to a reformation of Policy No. AP 61135 on the ground of mutual mistake as provided in the judgment.
The findings of fact, in part summarized and in part quoted, set out in the following ten paragraphs (our numbering), are not challenged by plaintiff's exceptions.
1. The late Casper A. Warner, on account of ill health, had not been actively engaged in the operation of his transfer business since about July, 1955. From July, 1955, the business was operated mainly by Winfred Alan Warner, his son, who was in charge of all of the outside affairs of the business, including the handling of liability insurance for the trucks, and Callie R. Lambeth, his daughter, who was in charge of the office affairs of the business.
2. Warner operated a total of six pieces (trucks) of revenue equipment. Warner's business consisted principally of the local transfer and hauling of household goods in and around High Point. From time to time all six of these revenue trucks were used in such local hauling.
3. Only two of Warner's trucks were used in long-haul and interstate operations, viz.: (1) The truck, which had a 22-foot body, described in Policy No. AP 61135, which "was used most regularly in the interstate or long-haul operations." (2) The collision truck, which had a 16-foot body, which "was only occasionally used as a substitute or replacement for the truck with the 22-foot body." Warner's I. C. C. permit number was painted on the side of each of these trucks and each carried the license plates of the several states through which interstate hauling was conducted by Warner.
4. When the collision truck was used in interstate or long-haul operations, the truck described in Policy No. AP 61135 "was removed from such long-haul or interstate operations and was not again used in long-haul or interstate operations until the other truck (the collision truck) had returned to the warehouse."
5. Under date of February 1, 1950, plaintiff, designated therein as "Company," and Flythe Insurance Agency, designated therein as "Agent," both of High Point, North Carolina, made and executed an Agency Agreement, which was still in force when this action was tried. It contained, inter alia, the following provisions:
"(1) Agent has full power and authority to receive and accept proposals for insurance covering such classes or risks as the Company may, from time to time, authorize to be insured, * * *
"(2) The Company authorizes the Agent to countersign and deliver policies of insurance signed by the authorized officials of the company, and to request or prepare customary endorsements, changes, assignments, transfers and modifications of policies from time to time where loss has not occurred."
6. Flythe Insurance Agency, owned by Lloyd W. Flythe, Sr., had been an established insurance agency for some thirty-five years. Lloyd W. Flythe, Jr., had been in the Agency since about 1953; and prior to July, 1956, he became, and since then has been, the principal operator of the business. "Flythe, Jr. was both a writing agent and policy agent; he solicited and placed the insurance and issued policies."
7. "When Lloyd Flythe, Jr. came with the Agency about five years ago, Warner's Transfer and Storage Company was one of the clients that the Agency serviced. Lloyd Flythe, Jr. was acquainted with Casper A. Warner and his son Winfred Alan Warner and his daughter Mrs. Callie Lambeth. The Flythe Agency handled all of the liability insurance coverage and the cargo liability insurance coverage upon the Warner trucks. He was familiar with the operations that Warner's Transfer and Storage Company *44 was conducting and was acquainted with the equipment that they used in their operations."
8. Each of the two (renewal) policies involved herein bear facsimile signatures of plaintiff's president and treasurer. Policy No. AP 61135 was "Countersigned at High Point, N. C. this 7 day of July 1956. L. W. Flythe Insurance Agency, Authorized Agent." Policy No. AP 62156 was "Countersigned at High Point, N. C., 10-17-56, this 8th day of November 1956. L. W. Flythe, Flythe Insurance Agency, Authorized Agent."
9. "When the long-haul policy came up for renewal in July of 1956, Lloyd W. Flythe, Jr. was advised by the insured that, even though the Chevrolet truck listed in the long-haul policy was primarily the long-haul unit, for convenience Warner had had another vehicle licensed for long haul, so that if the long-haul truck had a load of furniture being delivered locally or when due to repairs or load capacity of the vehicles involved he needed a substitute or replacement, the insured wanted to be able to substitute the other 1950 truck which was licensed for long-haul operations to expedite operations, and have insurance coverage for the substitute vehicle. The agent then went to the home office of Textile Insurance Company and conferred with John Fletcher who was at that time the chief underwriter for the plaintiff. Flythe and Fletcher had a number of conferences in regard to the issuance of the renewal of the long-haul policy."
10. "The duties of the chief underwriter of Textile Insurance Company consisted of, among other things, the determination of the classification of the risk and the premium to be charged for the risk; the issuing of policies and endorsements and the review of the operations of the insured and determining the type of policy or policies and the endorsements which should be issued to cover such operation; and the review of reports and the loss experience of the insured and the issuance of renewal policies if the risk proved satisfactory. Fletcher, as chief underwriter, was empowered to authorize the substitution of one vehicle for another and had power and authority to issue an endorsement authorizing such substitution and had authority to issue an endorsement embodying the agreement between Textile Insurance Company and the insured for the substitution of another vehicle for the vehicle described in the long-haul policy.
The court also found as facts: "Prior to the time the renewal policy was issued, Flythe explained to Fletcher that, although the 1950 Chevrolet truck which was described in the long-haul policy was primarily used in long-haul and interstate commerce operations, for convenience the insured had another 1950 truck licensed for long-haul and interstate commerce operations and when the truck primarily used in long-haul and interstate commerce operations was being used locally or when because of weight capacity or while out for repairs the described vehicle was not being used, the insured wanted to substitute a 1950 truck in lieu of the described truck so that he would have coverage for the substituted truck. Fletcher agreed to this arrangement and it was understood that only one truck at a time could be used for long-haul operations and never at any time was there to be but one long-haul unit operated beyond the 50-mile radius. Under these circumstances, no question was raised by Fletcher about increasing the premium for the use of the substitute truck in interstate commerce and long-haul operations. After the conferences of the agent with the chief underwriter of Textile Insurance Company, Textile Insurance Company issued the policy and forwarded it to Flythe to be countersigned and delivered by him to the insured. Upon inquiry by the insured, Flythe advised the insured of the agreement for the substitution of the other 1950 Chevrolet for the Chevrolet truck described in the policy and told him as long as the vehicles were all insured by the same company and the Company was aware of how they were used, the substitution could be made." *45 Plaintiff's exception to these crucial findings of fact is overruled. The testimony of Lloyd W. Flythe, Jr., fully supports these findings of fact; and there is much corroborative evidence to support his testimony. John F. Fletcher, a witness for plaintiff, testified that he had several conversations with Flythe relating to the Warner coverage prior to the issuance of Policy No. AP 61135. He did not deny, but simply did not recall, that he had made the agreement to which Mr. Flythe testified explicitly and in detail.
The court also found as facts that on April 10, 1957, when the collision occurred, Warner was using the collision truck to haul Sirrul's household goods from High Point, N. C., to Miami, Florida, as a substitute or replacement for the truck described in Policy No. AP 61135 because that truck was in poor mechanical condition, in need of repairs, and was in the warehouse where Warner's trucks were kept when not in use. These findings of fact are fully supported by competent evidence. Hence, plaintiff's exception thereto is overruled.
The court also found as a fact that "* * Gary Wayne Misenheimer was a passenger in the 1950 model Chevrolet truck being operated by Winfred Alan Warner * * *" We find no evidence deemed sufficient to support this finding of fact. Plaintiff's assignment of error, based on its exception to this finding of fact, is sustained. The judgment should be modified by striking therefrom this finding of fact. It is so ordered.
Unquestionably, as plaintiff contends, Policy No. AP 61135 as written does not describe the collision truck nor do any of its provisions extend coverage to the collision truck; and, in this jurisdiction, unless and until a policy is reformed there can be no recovery on the ground that it does not express the real agreement between the parties. Floars v. Aetna Life Insurance Co., 144 N.C. 232, 56 S.E. 915; Graham v. Mutual Life Insurance Co., 176 N.C. 313, 97 S.E. 6; Burton v. Life & Casualty Insurance Co., 198 N.C. 498, 152 S.E. 396; Annotation: 66 A.L.R. 763, 771.
The cross action of the Warner defendants is not on the policy as written. Compare Peirson v. American Hardware Mutual Insurance Co., 248 N.C. 215, 219, 102 S.E.2d 800. Based on appropriate allegations, the Warner defendants have established by evidence clear, strong and convincing, the real agreement between the parties and that the policy failed to express the real agreement because of mistake common to both parties; and the judgment reforms the policy so as to express the real agreement and then determines the rights of the parties on the basis of the policy as reformed.
"It is well settled that in equity a written instrument, including insurance policies, can be reformed by parol evidence, for mutual mistake, inadvertence, or the mistake of one superinduced by the fraud of the other or inequitable conduct of the other." Williams v. Greensboro Fire Insurance Co., 209 N.C. 765, 769, 185 S.E. 21, 23; 29 Am.Jur., Insurance § 241; 44 C.J.S. Insurance §§ 278, 279; 7 Appleman, Insurance Law and Practice, § 4256.
It is noted that while Lloyd W. Flythe, Jr., advised Warner that plaintiff agreed that the collision truck was covered under the conditions alleged by the Warner defendants, Flythe was authorized to do so by plaintiff's then chief underwriter.
Our conclusion is that, except as noted above, the court's findings of fact are supported by the evidence; and that the judgment is supported by the court's findings of fact.
Each of plaintiff's thirty-six assignments of error has been carefully considered. As indicated above, two of plaintiff's assignments of error are sustained. In all other instances, plaintiff's assignments of error are overruled.
As modified in accordance with this opinion, the judgment of the court below is affirmed.
Modified and affirmed.